**Wayne Thomas KEAR, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20373.**

United States Court of Appeals
Ninth Circuit.

Oct. 19, 1966.

As Amended Nov. 23, 1966.

Eric J. Schmidt, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Wm. B. Shubb, Asst. U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge:

Wayne Thomas Kear appeals from a judgment of conviction, and sentence, for the interstate transportation of a stolen vehicle, in violation of 18 U.S.C. § 2312 (1964).

On July 15, 1965, Kear left Casper, Wyoming, in company with two friends, and headed for Bakersfield, California where they sought employment. They stopped overnight on July 16, 1965 at Verdi, Nevada, which is situated two or three miles east of the California-Nevada state line. Kear separated from his travel companions and spent the evening drinking in various bars in Verdi. Kear claims that he does not remember anything further until he awoke the next morning, July 17, in an alley in Truckee, California, twenty-four miles from Verdi. Kear testified that he found the stolen car in the streets of Truckee with the keys in the ignition and drove off in it toward Sacramento.

Early on the morning of July 17, 1965, a Pontiac four-door sedan was reported stolen in Verdi, Nevada. At 7:18 that morning, while Kear was heading west in the stolen vehicle, he was arrested by an officer of the California Highway Patrol just west of Truckee, California. Shortly after 2:30 that afternoon Kear was interrogated by a special agent of the Federal Bureau of Investigation (F.B.I.) and at that time signed a confession to the crime.[1]

Kear asserts that the trial court erred in several respects in connection with the use of his written confession at the jury trial.

At the outset of the trial, Kear's attorney objected to any use of the confession and, in effect, moved that it be withheld from the jury. He did so on the ground that Kear was denied the right to counsel under the Sixth Amendment, and denied his rights under the Fifth Amendment at the time the statement was made. The court inquired whether the objection was made solely on the basis of the rights

1. In his written confession Kear stated, in part:

"On Thursday, July 15, 1965 I left Casper, Wyoming with two friends enroute to Bakersfield, California, where I hoped to find employment. We traveled in my friends' car and arrived in Verdi, Nevada at about 7:30 P.M., on Friday, July 16, 1965.

"After eating dinner with my friends I decided to have a drink and left my friends with the understanding that we were to leave the following morning at 4 A.M. My friends were to stay at the Verdi Inn and I was to sleep in their car for the night.

"During the evening I had quite a few drinks in different bars at Verdi, Nevada, and the next I remember is that at about sunrise on Saturday, July 17, 1965, or early this morning, I awoke in a 1959 black Pontiac Catalina hardtop sedan.

"At the time I did not know who owned the car or how I got there.

"The keys to the car were hanging in the ignition switch, so I started the car and drove back to Verdi to the Verdi Inn and looked for my friends."

*        *        *        *        *

"After I returned to the Verdi Inn I asked someone there if he had seen my friends and he told me they had departed just a few minutes before. I started after them.

"I had hoped to catch them on the highway and continue with them to Bakersfield, California and leaving the Pontiac along the highway. With this in mind I headed West on Interstate 80 and drove the Pontiac into California. I was headed West on Interstate 80 when I was stopped and arrested by the California Highway Patrol.

"I did not have permission of the owner to take or drive the Pontiac, and I know that I was doing wrong in stealing the car. I really don't know why I stole the car, since my friend told me I could use his car anytime I wanted to, and his car was parked just down the street from where I was when I woke up in the Pontiac."

announced in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977, or whether it was also made on the basis of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. Counsel replied, "Escobedo, alone, your Honor."

As a result of this objection and motion, a pretrial hearing as to the admissibility of the confession was immediately held out of the presence of the jury. After testimony had been received, the court ruled that the confession could be used at the trial. When the confession was offered in evidence during the trial, counsel renewed his objection "on the same grounds" previously heard. The objection was overruled and the confession was read to the jury. Kear testified at the trial that he had stolen the car but stated, contrary to the confession, that he had stolen it in Truckee, California, and had not crossed a state line with the car.

■ Kear now argues that the district court erred in permitting his counsel to proceed first at the pre-trial hearing, contending that the Government had the burden of proof and should have first produced its evidence bearing on the admissibility of the confession. Although counsel for Kear expressed a preference at the pre-trial hearing that the Government first produce the F.B.I. agent who took the statement, he told the trial court: "It really doesn't make any difference, your Honor." Since counsel for Kear did not object at any time during the pre-trial hearing to this manner of proceeding, the point was not saved for appellate review. In any event, we do not believe Kear was prejudiced.

Kear also argues that the pre-trial hearing concerning the admissibility of

the confession was improperly conducted because the asserted inquiry into the voluntariness of the confession was infected by a parallel inquiry into the truthfulness of the confession.[2] The record indicates that at the pre-trial hearing both the Government and the trial court inquired into the reliability of the confession.

The basic premise of Kear's argument is without foundation, however, because neither prior to nor during the hearing did Kear's counsel contend that the confession was involuntary. It is true that, during the pre-trial hearing, Kear testified that he had drunk a great deal of intoxicating liquor the night before and that at the F.B.I. investigation at 2:30 p. m. the next afternoon, he was "(s)till about three-quarters drunk." He did not testify, however, that this rendered him incapable of giving a voluntary confession, nor was such a contention advanced by his counsel. This is likewise true of the trial itself, when Kear again took the witness stand.

Kear's insistence that he was partially intoxicated at the time of the interrogation was not intended to demonstrate incapacity to give a voluntary confession, but was apparently intended to support his position that he was so intoxicated at the time of the automobile theft that he was not responsible for what happened. During cross examination at the trial, Kear testified that he still did not clearly remember what happened in connection with the automobile theft.

The sole purpose of the pre-trial hearing, as expresssed by Kear's counsel, was to determine whether, in connection with the F.B.I. interrogation which led to the confession, Kear had been denied the Fifth and Sixth Amendment rights an-

2. In support of the legal premise for this argument, Kear cites Jackson v. Denno, 378 U.S. 368, 386, 84 S.Ct. 1774, 12 L. Ed.2d 908; and Rogers v. Richmond, 365 U.S. 534, 543–545, 81 S.Ct. 735, 5 L.Ed. 2d 760. In Rogers, the Supreme Court stated that "(t)he attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth." (365 U.S. at 544, 81 S.Ct. at 741)

nounced by the Supreme Court in *Escobedo*.[3]

■ The specifics of *Escobedo* deal not with the question of voluntariness but with the right to counsel and the privilege against self-incrimination. The precise holding of *Escobedo,* as quoted in Johnson et al. v. State of New Jersey, 384 U.S. 719, 733–734, 86 S.Ct. 1772, 16 L.Ed. 2d 882, was that statements elicited by the police during an in-custody interrogation, may not be used against the accused at a criminal trial where:

"'* * * the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *.'" (384 U.S. at 734, 86 S.Ct. at 1781) [4]

Since *Escobedo* questions only call for an objective determination of whether Kear requested and was denied counsel, and of whether he was advised of his right to remain silent, we think it highly unlikely that interjection of the inquiry concerning reliability could have confused the trial court to the prejudice of Kear. We need not decide whether the interjected inquiry was in any event permissible as bearing upon Kear's credibility.

■ We therefore hold that, under the circumstances of this case, the inquiry concerning reliability made during the course of the pre-trial hearing on the admissibility of Kear's confession, did not constitute reversible error.

Kear next contends that error pervaded the pre-trial hearing because "* * * *no inquiry whatever* was addressed to the existence of even the most obvious forms of threat and coercion and *no evidence* was offered on the issue." (Emphasis in original.) This contention has possible merit only if the pre-trial hearing had been concerned with the voluntariness of the confession. We have held that it was not.

Kear next argues that it was established at the pre-trial hearing that at the time of his F.B.I. interrogation, he was never given clear and unqualified advice that he had a right to remain silent, as required under *Escobedo*.

At the pre-trial hearing, the following colloquy occurred between Kear and his own counsel:

"Q Did he advise you at that time that you did not have to make any statement or answer any questions without first consulting with an attorney? A He said anything I said could be held against me, and he said, 'I have to inform you of your rights.' I said, 'I know my rights.' And he said something, I don't remember what he said."

■ For present purposes we will assume that Kear's statement to the F.B.I. agent that "I know my rights," did not excuse the agent from advising Kear, as required by *Escobedo*, that he had an absolute constitutional right to remain silent. We will likewise assume, without deciding, that the signed confession con-

---

3. The *Escobedo* opinion starts out by stating the question to be whether the police interrogation constituted a denial of the assistance of counsel in violation of the Sixth Amendment, made obligatory upon the states by the Fourteenth Amendment. In Miranda v. State of Arizona, 384 U.S. 436, at 439–440, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694, however, the Court indicated that *Escobedo* was concerned with both Fifth and Sixth Amendment rights.

If the issue of voluntariness had actually been injected into this case, evidence bearing upon the specifics of *Escobedo* would have been relevant to that issue. See Gladden v. Holland, 9 Cir., 366 F. 2d 580, decided August 29, 1966.

4. In *Miranda*, supra, 384 U.S. at 444, note 4, 86 S.Ct. at 1612, the Supreme Court indicated that when, in *Escobedo*, the Court spoke of an investigation which had focused on the accused, it meant "* * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

The Kear trial commenced on August 3, 1965. Thus the principles announced in *Escobedo*, but not those additionally laid down in *Miranda*, are applicable here. See *Johnson*, supra, 384 U.S. at 734, 86 S.Ct. 1772.

taining a typed-in clause stating that he had been advised that he did not have to make a statement or answer any questions "without first consulting with an attorney of my choice or anyone else," also fell short of proving Kear had been given unqualified advice of his right to remain silent. See Miranda v. State of Arizona, 384 U.S. 436, 492–493, 86 S.Ct. 1602, 1637.[5]

The showing referred to above was made during the pre-trial hearing. Although we have assumed that the evidence at the pre-trial hearing was inadequate to prove Kear was properly advised of his right to remain silent, the testimony at the trial indicates that Kear knew his rights under *Escobedo* prior to interrogation.

F.B.I. agent James R. Neves testified at the trial that when he started to advise Kear of his rights before beginning the interrogation, Kear interrupted him to say: "I know I don't have to make a statement and I can have an attorney." When Kear later took the witness stand during the trial, he confirmed Neves' testimony, as indicated by the following colloquy on his cross examination:

"You testified that you said to him, 'I know my rights'? A Yes, sir. Q What did you think your rights were? A That I didn't have to say *anything* to him, I didn't have to sign any statement." (Emphasis added.)

There may be a difference between "I know I don't have to make a *statement*," which is what Neves testified Kear told him, and "I didn't have to say *anything*," which is what Kear testified to at the trial when asked what he thought his rights were at the time of the interrogation. (Emphasis added.) Depending upon the circumstances of the particular case, a statement by a defendant prior to interrogation that "I know I don't have to make a statement" may not be adequate protection of defendant's rights under *Escobedo*, unless it can be proved, as it was in the present case, that defendant knew he had an absolute right to remain silent.

Kear's volunteered remark to Neves, that he knew he did not have to make a statement, made it unnecessary for Neves to advise him to the same effect. Although the proof that Kear knew he could remain silent was developed during the trial, and actually after the confession had been received in evidence, rather than during the pre-trial hearing, it cured any error which might otherwise have resulted had the pre-trial showing not been thus augmented.

Kear asserts that the trial court committed error in failing to make findings of fact pertaining to the voluntariness of the confession. No findings of fact as to voluntariness were required because this was not an issue at the pre-trial hearing.

As for the actual issue which was before the court—whether Kear was advised of his right to remain silent—we have assumed that the pre-trial proof was insufficient. Hence, findings of fact, if made on the basis of that hearing, would have been deficient. We have already held, however, that any error in this regard was cured at the trial by evidence that Kear acknowledged, at the outset of the interrogation, that he knew he did not have to make a statement. A finding of fact at that stage of the proceeding would have served no worthwhile purpose.

Kear argues that the trial court erred in failing to instruct the jury that the weight given to the confession should be conditioned in some degree upon the circumstances surrounding its making,

---

5. The Supreme Court there stated:
    "The mere fact that he signed a statement which contained a typed-in clause stating that he had 'full knowledge' of his 'legal rights' does not approach the knowing and intelligent waiver required to relinquish constitutional rights. Cf. Haynes v. [State of] Washington, 373 U.S. 503, 512–513 [83 S.Ct. 1336, 1342, 10 L.Ed.2d 513] (1963); Haley v. [State of] Ohio, 332 U.S. 596, 601 [68 S.Ct. 302, 304, 92 L. Ed. 224] (1948) (opinion of Mr. Justice Douglas)."

*i. e.*, voluntariness of the confession. He asserts that a proposed instruction to this effect was offered on his behalf, but was rejected by the trial court, and no instruction whatever was given on the point.

The evidence pertaining to the circumstances under which the confession was received was presented to the jury to assist the jury in determining its reliability. See Jackson v. Denno, 378 U.S. 368, 386, note 13, 84 S.Ct. 1774. Although a general instruction was given on the matter of evaluating the credibility of witnesses' testimony, no specific reference was made in this regard to Kear's confession.[6]

■ The proposed instruction to which Kear refers is not in the record before us, nor is it quoted in the specifications of error, as required by Rule 18, subd. 2(d) of the Rules of this Court. It is, however, set forth as an exhibit to appellant's opening brief on appeal. The proposed instruction, as there quoted, would not have advised the jury as to the factors they may consider in judging the credibility of the confession. Instead, it would have told them that if they found that the confession had been given involuntarily, they should disregard it entirely.

■ Had there been an issue of voluntariness in this case, an instruction to this effect would have been required. Under the so-called Massachusetts procedure, which is followed in this Circuit, the jury passes on voluntariness, pursuant to a proper instruction, after the judge has fully and independently resolved the issue of voluntariness against the accused. See Jackson v. Denno, 378

U.S. 368, 378–379, 391, 84 S.Ct. 1774; Dyson v. United States, 9 Cir., 283 F.2d 636; Smith v. United States, 9 Cir., 268 F.2d 416; cf. Leonard v. United States, 9 Cir., 278 F.2d 418. As we have stated above, however, there was no issue of voluntariness in the trial of this case.

■ An instruction advising the jury that the evidence relating to the making of a confession may be considered by them in determining the credibility of the confession, would have been appropriate. See Jackson v. Denno, at 386, note 13, 84 S.Ct. 1774. But apparently no such instruction was requested. Moreover, it is unlikely that Kear was prejudiced by the failure of his trial counsel to request such an instruction, because counsel called the matter to the attention of the jury, arguing that Kear's mental attitude and physical well-being at the time the confession was made should be taken into consideration in determining its reliability.

In view of the considerations referred to above, we hold that the trial court did not err in failing to instruct that the circumstances under which the confession was made should be considered in determining its reliability.

Kear also argues that a second confession, testified to at the trial by Officer Martin Sturcke, was given involuntarily, and was therefore inadmissible. No such objection was made at the trial and we therefore will not consider it now.

Kear urges that the district court erred in numerous other respects. We have examined each of these contentions but find them to have insufficient merit to warrant discussion.

Affirmed.

---

**6.** Kear had a long string of prior felony convictions for grand larceny, burglary, forgery and auto theft. He had been released from Wyoming State Penitentiary only seventeen days before he stole the car.