**Ben Lee BROWN, Appellant,**

v.

**Walter E. CRAVEN, Appellee.**

**No. 24323.**

United States Court of Appeals, Ninth Circuit.

April 16, 1970.

Rehearing Denied May 13, 1970.

Ben L. Brown, in pro. per.

Robert J. Polis, Deputy Atty. Gen., Thomas C. Lynch, Atty. Gen., Los Angeles, Cal., for appellee.

Before TUTTLE,* ELY, and KILKENNY, Circuit Judges.

ELY, Circuit Judge:

Brown is a California state prisoner, confined as a result of his conviction of the crime of second degree murder. After exhausting available state court remedies, he filed a petition for writ of habeas corpus in the court below. The District Court called for and received a written response to the petition and thereafter denied the petition without having conducted an evidentiary hearing. Brown appeals.

We have concluded that the judgment must be reversed. Brown's petition set forth, in fine detail, numerous allegations of infringement of state and federal rights, including rights guaranteed by the federal constitution. In the light of our disposition of the cause, no essential purpose would be served by our review of all of the allegations, or of the record of the state court proceedings, in detail. Briefly summarized, the facts giving rise to the state court prosecution are as follows: Brown, with his fourteen year old son, shared living quarters with a woman who was the victim of the homicide. Brown and the woman apparently lived together as husband and wife. Before returning to their dwelling on the evening of the homicide, Brown and the victim had wandered in the company of each other. There are indications in the record that Brown drank intoxicants heavily during that period, but no direct evidence to that effect was presented

---

* Honorable Elbert Parr Tuttle, Senior United States Circuit Judge, Fifth Circuit, sitting by designation.

during his trial. The victim ingested a drug. A subsequent autopsy was performed on her body, revealing that a concentration of barbiturates was present in her blood. After the two returned to their home, and perhaps before, an argument between them, leading to violence, ensued. The woman went to bed, and going to sleep with a lighted cigarette in her hand, burned herself to some degree. According to prosecution evidence presented during the state court trial, Brown undertook to treat the victim's burn, applying some type of salve thereto. Later, Brown and his son discovered that the woman had apparently died. They immediately called for the police, who verified the fact of death. Upon learning of her death, Brown broke into tears.

When investigating police officers reached the home, one of them immediately began to question Brown without having advised Brown, in any way, of his rights, including his right to remain silent. During this initial interrogation, Brown, in response to the officer's question, stated that "he had slapped [the victim] and that she had fallen off a chair or bench and onto the floor in the dressing room area." The officer then advised Brown of certain of his rights, including the "right to have an attorney represent him during all the stages of the investigation" and the "right to remain silent or say nothing * * *." Thereafter, and over the next two or three days, Brown made numerous incriminating statements, including the statement that he and the victim "kept arguing and fussing from the time we got home until four or five hours later * * *" "over her use of pills * * *" and that he "picked up the chair [and] I hit her with it." During the interrogation, Brown also told of having gone to bed with the victim, of having been awakened by her when the bed caught fire from the cigarette, and of having extinguished the fire.

 When, during his state court trial, Brown's appointed attorney objected to the police testimony as to the in-

criminating statements claimed to have been made by Brown on the ground, inter alia, that a proper foundation for their admissibility had not been established, the trial judge overruled the objection. His ruling was apparently based on one of the police officer's answer of "Yes" to the prosecuting attorney's suggestive question "And the statements that the defendant made, did they at least appear to be voluntary?" Notwithstanding, the state court record as a whole makes it manifest that the state trial court did not comply with the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, (1964). In Javor v. United States, 403 F.2d 507, at 509 (9th Cir.1968), our court wrote:

> "Under Jackson v. Denno * * *, a defendant who objects to the admission of his confession is entitled to have the issue of voluntariness determined by a tribunal other than the convicting jury (378 U.S. at 391, 84 S.Ct. 1774, note 19); in this case, by the trial judge. The trial judge's resolution of the issue is 'preliminary' in the sense that it precedes the submission of the same issue to the jury, but it is in no sense a partial, limited or tentative determination. On the contrary, it is the primary determination of the issue of voluntariness; it is the determination required by the Constitution. It is the only determination of the issue in jurisdictions following the 'orthodox' rule. 378 U.S. at 378, 84 S.Ct. at 1774. The trial judge's determination must therefore involve a full resolution of the constitutional issue 'including the resolution of disputed facts upon which the voluntariness issue may depend.' 378 U.S. at 391, 84 S. Ct. at 1788.

> "The trial court's obligation is not satisfied by a determination that the government has made out a prima facie case that the confession was voluntary, leaving it to the jury to determine on conflicting evidence whether the confession was freely and volun-

tarily made; it is 'for the trial judge to first decide these conflicts and discrepancies.' See also Jackson v. Denno, 378 U.S. at 377–378, 84 S.Ct. 1774; Burns v. Beto, 371 F.2d 598, 603–604 (5th Cir.1966). Cf. Mullins v. United States, 382 F.2d 258, 261–262 (4th Cir.1967); Fisher v. United States, 382 F.2d 31, 34 (5th Cir. 1967); Kear v. United States, 369 F. 2d 78, 84 (9th Cir.1966); Butterwood v. United States, 365 F.2d 380 (10th Cir.1966); United States v. Inman, 352 F.2d 954, 956 (4th Cir.1965).

"And it is also settled that although express findings are not required, the fact that the trial court has made such a full and independent determination of the voluntariness of the confession must be ascertainable from the record as a whole. Jackson v. Denno, supra."

Moreover, the Supreme Court has written, since the issuance of its opinion in Jackson v. Denno, "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record *with unmistakable clarity*." Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967) (emphasis added). On the record before us, the state trial judge's conclusion, if such he reached, that Brown's confessing statements were voluntary most certainly does not appear "with unmistakable clarity."

We are gravely troubled over another issue presented in Brown's petition, an issue involving the question whether he was, in his state court trial, adequately represented by counsel. Since Brown was an indigent, the state court originally ordered that he should be represented by the office of the Public Defender of Los Angeles County, Califor-

nia. Pursuant to that order, a certain attorney from the Public Defender's office was assigned for Brown's assistance. Almost immediately a dispute arose between Brown and this particular attorney. There was a long period of delay between the time when Brown was charged and the time when he was finally brought to trial, and there is no suggestion that Brown himself was responsible for any of that delay.[1] During that period, Brown himself made four motions that some other attorney be appointed to represent him.[2] The state court summarily denied the motions, making no adequate inquiry into the cause of Brown's dissatisfaction with his counsel or taking any other steps which might possibly lead to the appointment of substitute counsel in whom Brown could repose his confidence. The result was that Brown was forced into a trial with the assistance of a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not, in any manner whatsoever, communicate. Thus, the attorney was understandably deprived of the power to present any adequate defense in Brown's behalf.

Brown made statements in open court that "Y'all are having a Trial, there is no need for me to take the stand * * * I have no Lawyer here" and "You are trying a case; but not me * * *" Accordingly, Brown did not testify in his own behalf, there was only perfunctory defense, and the jury found him guilty of murder in the first degree. The trial judge promptly reduced the offense to murder in the second degree. In his petition below, Brown alleged that his appointed attorney did not interview witnesses who were available and who could have testified as to facts, including his intoxica-

---

1. *Compare* Good v. United States, 378 F.2d 934 (9th Cir. 1967), relied upon by the District Court, wherein we held that the District Court did not abuse its discretion in denying the motion of an accused, filed one day before her trial, to dismiss her retained counsel.

2. The first two of these were made on December 2, 1965, and December 21, 1965, respectively. The trial did not begin until February 18, 1966.

tion, bearing upon the existence of that malignant intent necessary to support conviction for the crime of murder. We do not criticize the defense attorney.[3] Since Brown would not communicate with him, it is understandable that the attorney performed his duty under the gravest handicap. We think, however, that to compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever. *See* Entsminger v. Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Of course, a court is not required to provide an indigent accused with any particular attorney whom he may desire, and we think that the state court might very properly have required Brown to accept the assistance of some other of the great number of competent attorneys associated with the Public Defender's office of Los Angeles County. The problem arises because the state court did not, in our opinion, take the necessary time and conduct such necessary inquiry as might have eased Brown's dissatisfaction, distrust, and concern. And, we think it not unreasonable to believe that had Brown been represented by counsel in whom he had confidence he would have been convicted, if at all, of no more than the offense of manslaughter.

The judgment is reversed. Upon remand, the District Court may temporarily hold Brown's petition in abeyance and shall grant the petition unless California authorities do, within a reasonable period, not exceeding sixty days, grant Brown a new trial attended with all reasonable assurance that he be represented by competent counsel, from the Public Defender's office or elsewhere, in whom he may, if he does not demonstrate obstinance, recalcitrance, or unreasonable contumacy, repose his confidence.[4]

Reversed and Remanded, with directions.

KILKENNY, Circuit Judge (Specially Concurring):

I would remand to the district court with directions to require the Superior Court of California, (1) to hold within sixty days, a Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), type hearing on the voluntariness of the appellant's pre-trial admissions and statements; and (2) to hold a hearing on whether appellant's objection to his legal representation was to the Public Defender's Office as a whole, or as to the individual attorney assigned by the Public Defender's Office. If the

---

3. The defense attorney recognized the problem, suggesting the appointment of another attorney. At one point, prior to the trial's commencement, he addressed the court, in part, as follows:

 "Where he refuses to .cooperate at all, it becomes a question of whether or not I can answer ready. I have discussed the case with him earlier, but now he refuses to talk to me at all. The propriety of going ahead where the defendant won't speak to the lawyer, it is a little difficult for me to state—"

 \* \* \* \* \*

 "I just thought the Court might consider this as a rare situation. 987a [Cal.Penal Code, relating to appointed counsel] provides where there is a conflict of interest or other reasons. I don't know whether this comes under 'other reasons' for appointing private

counsel or not. I would merely throw that out for the Court's consideration; and this is a serious charge, not that I suppose that makes any difference, but as a practical matter, it makes it awkward. The Code Section isn't limited strictly to conflicts of interest. It is very seldom used, I take it, for other reasons. Now, I don't know whether the Court might consider this other reason or not."

4. Brown's appeal to our court was, on March 5, 1970, ordered submitted for decision on the briefs on file. Oral argument was not presented. In a letter received by our court's clerk on February 17, 1970, Brown requested that we appoint counsel to present oral argument in his behalf. That motion is denied, *nunc pro tunc.*

California court failed to hold these hearings and make and file its findings within the time limited, a new trial would be granted. Otherwise, the findings on those issues would be filed in the district court and forthwith transmitted to this court for appropriate action.