53 F.3d 339
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Claudell Earl MARTIN, Petitioner-Appellant,
v.
B.J. BUNNELL, Warden; Attorney General of California; Dan
Lungren, Respondents-Appellees.
 No. 94-55498.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 7, 1995.*
 Decided May 8, 1995.
As Amended June 13, 1995.
 
 Before: WALLACE, Chief Judge, HUG, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Claudell Earl Martin appeals pro se the district court's denial of his 28 U.S.C. Sec. 2254 petition for writ of habeas corpus challenging his state court convictions for first and second degree murder. Martin argues that the trial court erred by denying his request for substitute counsel, and erred again by denying his request to proceed pro se to trial. Martin also argues that his due process rights were violated because the district court failed to inform him of the charges brought against him. Finally, Martin contends there was insufficient evidence to support his first degree murder conviction. As explained herein, we find these contentions to be without merit and affirm the decision of the district court.
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. Sec. 2253. As we explain herein, we reject Martin's contentions and deny his petition.
 
 FACTS
 
 4
 The record shows that Martin and his wife entered the home of Cory Mitchell and Carmen Daniels on November 8, 1978. Ten minutes later, the Martins exited the home and entered a waiting blue Camaro driven by a third person. As they drove off, Cory Mitchell, with gunshot wounds to his back, neck, and thigh stumbled out of the door and collapsed and died on the walkway. The police later arrived and found, in addition to Mitchell's body, the body of Carmen Daniels, propped against her bed with three gunshot wounds to her face and head. She was seated, holding her still crying baby in one arm and clutching the bed sheets with her other.
 
 
 5
 Police later arrested Martin, who waived his Miranda rights and claimed that Mitchell had initially pulled the gun, which accidentally discharged when he attempted to grab it. He also claimed that Daniels then pulled a gun on him which also went off two or three times as Martin knocked her down.
 
 
 6
 Martin waived his right to a jury trial and was subsequently convicted of second degree murder as to Count I and first degree murder as to Count II. The trial court sentenced Martin to 15 years to life for the first count to run concurrently with a sentence of life without the possibility of parole on the second count. Martin's conviction was affirmed on appeal by the California Court of Appeal for the Second Appellate District. That court and the California Supreme Court both subsequently denied appellant's petition for writ of habeas corpus.
 
 
 7
 Martin thereafter filed two petitions, seeking habeas corpus relief, with the District Court for the Central District of California. The district court combined the two petitions into a single, amended petition, and denied and dismissed it with prejudice. Appellant now appeals the district court's decision.
 
 STANDARD OF REVIEW
 
 8
 We review de novo the district court's denial of habeas relief. Jeffries v. Blodgett, 5 F.3d 1180, 1187 (9th Cir.1993), cert. denied, 114 S.Ct. 1294 (1994). However, a state court's findings of fact are presumed correct under 28 U.S.C. Sec. 2254(d) and are reviewed for clear error. Id.
 
 I.
 
 9
 Denial of Martin's Motions to Substitute Counsel And to
 
 Proceed Pro se:
 
 10
 In June and July of 1979, the trial court conducted a pretrial suppression hearing to consider whether Martin had voluntarily waived his Miranda rights. The trial court concluded that his waiver was proper. On September 12, 1979, the same court held a hearing to consider Martin's motion to represent himself and his motion to substitute counsel. The court determined that because of his low IQ, epilepsy, and difficulty expressing himself, Martin was incapable of making an intelligent decision to represent himself in a capital case. The trial judge also concluded that Martin had not shown a sufficient conflict with his appointed counsel to warrant substitution of new counsel.
 
 
 11
 The next day, September 13, 1979, the trial court, apparently concerned that it had committed error in denying Martin's request to represent himself, held a second hearing to reconsider that motion. Martin, however, no longer argued to represent himself. Instead, he appeared content to retain his appointed counsel as the trial court had ordered the day before.
 
 
 12
 At his post-conviction hearing, the California Court of Appeals ruled that Martin's decision not to argue the motion to represent himself amounted to a withdrawal of that motion. This finding was adopted by the federal magistrate and adopted, in turn, by the district court. Martin now argues that the trial court committed error in denying his motion at the initial hearing and that the trial court's subsequent decision to reconsider the motion could not cure this error.
 
 A. Denial of Motion to Substitute Counsel
 
 13
 We review for abuse of discretion the trial court's refusal to substitute counsel. United States v. Walker, 915 F.2d 480, 482 (9th Cir.1990). Because Martin's claim implicates the Sixth Amendment, we must determine whether the trial court conducted an adequate and fair hearing on his motion. Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir.1982), cert. denied, 461 U.S. 916 (1983). "[T]he state trial court's summary denial of a defendant's motion for new counsel without further inquiry violate[s] the Sixth Amendment." Id. (citing Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir.1970)). The court must conduct such inquiry "as might ease the defendant's dissatisfaction, distrust, and concern." Id. In evaluating the trial court's denial, we consider a number of factors, including the timeliness of the motion, the adequacy of the court's inquiry and whether the conflict between defendant and his counsel was so great that it caused a total lack of communication, preventing an adequate defense. Id.
 
 
 14
 Martin asserts that he made several motions to substitute counsel and that each was denied without giving him a proper hearing as required by People v. Marsden, 465 P.2d 44 (Cal.1970). Upon reviewing the record, the magistrate found three instances where the court had ruled on a motion to relieve counsel. The first was a June 6, 1979 minute order issued by Judge Julius Leetham denying the motion. The second occurred that same day after the case had apparently been transferred to Judge Gordon Ringer. He, too, issued a minute order denying the motion.
 
 
 15
 On September 12, 1979, the trial court again considered a motion to substitute counsel. At this hearing, which apparently followed immediately after the court denied Martin's motion to proceed pro se, the trial court inquired into Martin's reasons for seeking new counsel. The court conducted the inquiry in the presence of the prosecution. Martin argues that this was error because such inquiry should be made in camera. California law does not require the exclusion of the prosecution during a Marsden hearing absent a timely request by the defendant unless information will be presented to which the prosecution is not entitled or which could conceivably lighten the prosecutor's burden of proving its case. People v. Dennis, 223 Cal.Rptr. 236, 241 (Ct.App.1986); People v. Madrid, 213 Cal.Rptr. 813, 815 (Ct.App.1985). The record does not indicate that Martin made a timely request or that he presented information that the prosecution was not otherwise entitled to receive. The decision to hold the hearing in front of the prosecution was therefore not error.
 
 
 16
 During the hearing, Martin indicated that he was concerned that his counsel had "made up his mind" about his guilt. The court questioned Martin's counsel about the conflict and concluded that his assertions were unfounded. The asserted "conflict" appears to be no more than the fact that Martin did not want to hear his attorney's advice concerning the case. The record does not support a finding that the conflict between Martin and his counsel was so great as to constitute a total lack of communication that would prevent adequate defense. See Walker, 915 F.2d at 483; Hudson, 686 F.2d at 831. Therefore, the district court's decision on this issue is affirmed.
 
 B. Denial of Motion to Proceed Pro se
 
 17
 In Godinez v. Moran, 113 S.Ct. 2680, 2686-87 (1993), the Supreme Court recently held that the standard of competency to waive counsel is the same as that to stand trial. Martin argues that, applied retroactively, the Godinez holding requires a finding that the trial court erred in his case by initially denying his motion to represent himself. The trial court had initially ruled that because of his low IQ, epilepsy, and inability to articulate himself clearly, Martin was incapable of defending himself in a capital case.
 
 
 18
 This ruling, however, was not the end of the matter because the next day the trial court reopened the hearing to reconsider Martin's request. Martin, however, declined to argue the motion during the second hearing.
 
 
 19
 The California Court of Appeals found that because Martin did not argue in the reconsideration hearing as to why he should proceed pro se, he effectively withdrew his motion. This finding was adopted by the magistrate and the district court.
 
 
 20
 Martin argues that because the trial court clearly denied his initial request to proceed pro se, he was not, as a matter of law, required to argue the point further. He cites Dorman v. Wainwright, 798 F.2d 1358 (11th Cir.1986), cert. denied, 480 U.S. 951 (1987), for this proposition. Martin's argument fails at its premise. Although the trial court initially denied his request, it subsequently reopened the hearing and clearly indicated to Martin that it would reconsider his motion. The court made several pointed inquiries of Martin as to how he would proceed were he to represent himself. Martin, however, refused to cooperate at first, then repeated over and over that he was sticking with his attorney as had been decided in the previous day's hearing. This fact distinguishes Martin's case from those cases he cites in support of his argument. In each of those cases, the court denied the defendant's motion. Here, the motion was not finally denied until after the rehearing. The trial judge had made it clear to Martin that he was reconsidering the motion. Nevertheless, Martin decided not to pursue his arguments. The appellate court found that he had decided to abandon his request to proceed pro se. This finding is adequately supported by the record. Because we review the state court's findings of fact and the district court's adoption of these findings for clear error, Jeffries, 5 F.3d at 1187; Carter v. McCarthy, 806 F.2d 1373, 1375 (9th Cir.1986), cert. denied, 484 U.S. 870 (1987), we affirm the district court on this issue.
 
 II.
 
 21
 Failure to Inform Martin of the Charges Against Him
 
 
 22
 Martin contends that the state court failed to rule on his motion to strike the special circumstances allegation that would constitute grounds for the death penalty. This failure, he argues, violated his due process rights because he was forced to go to trial without being fully apprised of the charges against him.
 
 
 23
 At the conclusion of the preliminary hearing, the judge denied the motion to strike because there was a strong suspicion that a double homicide had been committed. The motion was renewed at the Superior Court and denied. Thus, it was clear that the State sought a conviction that could result in a sentence of death, up to the penalty phase of the trial. At that stage of the trial, the trial judge questioned the appropriateness of the death penalty, and the prosecution dropped its request for the death penalty. The defendant was fully informed of the charges against him. The fact that the State abandoned its request for the death penalty was advantageous to the defendant. No due process violation occurred.
 
 III.
 Sufficiency of the Evidence
 
 24
 Martin argues that there was insufficient evidence to support his conviction for the first degree murder of Carmen Daniels. He also argues that the district court erred in concluding that his conviction could be affirmed on the alternate ground of accomplice liability because the trial court did not make that finding.
 
 
 25
 In reviewing a sufficiency of the evidence claim, this court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This determination must be gauged in light of the applicable state law defining the elements of the offense charged. Id. at 324 n. 16. Under California law, first degree murder is the unlawful killing of a human being in a willful, deliberate, and premeditated manner. The intent required for first degree murder can be proved by facts that show some combination of motive, planning activity, or a preconceived design to take the victim's life in a particular way. People v. Anderson, 447 P.2d 942, 949 (Cal.1968).
 
 
 26
 The evidence produced at trial was sufficient to support the conviction under the Jackson v. Virginia standard. First, Martin made a written statement that he killed both Mitchell and Daniels. Although he claimed his actions were in self-defense, the physical evidence was wholly inconsistent with this claim. For example, Martin argued that, after struggling with and shooting Mitchell, Daniels pulled a gun on him. He then claims that he leaped on Daniels and the gun went off two or three times. However, Daniels was found seated with three gunshot wounds to her head and face. She was still holding her baby, indicating there was no struggle as claimed by Martin. A sheet was pulled over Daniels' head. A blue Camaro pulled up and double-parked outside the apartment after Martin and his wife entered. This car then sped away with the couple after they exited the apartment. This tends to prove the crime was planned. There is sufficient evidence to allow any rational trier of fact to conclude beyond a reasonable doubt that Martin committed first degree murder.
 
 CONCLUSION
 
 27
 Because all of Martin's claims lack merit, we affirm the judgment of the district court denying his petition for writ of habeas corpus.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3