59 F.3d 175
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Michael Emerson FARRIS Petitioner-Appellant,
v.
John HALLAHAN, Warden, et al., Respondents-Appellees.
 No. 94-16909.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 15, 1995.*
Decided June 26, 1995.
 
 Before: GOODWIN, FARRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Michael Emerson Farris was convicted of aggravated assault in the Superior Court of Maricopa County, Arizona, and sentenced to a term of fifteen years' imprisonment. After unsuccessfully appealing his conviction to the Arizona Court of Appeals and the Arizona Supreme Court, Farris filed pro se this 28 U.S.C. Sec. 2254 petition in the District Court for the District of Arizona. Judge Muecke denied the petition. We affirm.
 
 I. Improper representation
 
 3
 Originally, the Maricopa County Public Defender's Office was appointed to represent Farris. On July 24, 1987, the Superior Court issued an order relieving the Public Defender as counsel and substituting a private attorney named Robert Billar. This substitution of counsel was ordered pursuant to an earlier order, issued May 4, 1987 by the presiding judge of the criminal department of the Maricopa County Superior Court ("the May 4 order"), finding that the Public Defender's Office was not up to par and ordering "that all matters which are charged through the Maricopa County Grand Jury System for defendants determined by the Court to be indigent shall be assigned to private court-appointed attorneys."
 
 
 4
 According to the Arizona Court of Appeals' written opinion affirming Farris' conviction, sometime after Billar had been appointed as Farris' counsel but prior to October 27, 1987, Billar became associated with the Public Defender's Office. Therefore, on October 27, 1987, the Superior Court issued an order "relieving Robert Billar as defense counsel and appointing the Public Defender's Office" ("the October 27 order"). This substitution of counsel was nominal only. After October 27 Billar continued to represent Farris as before, but as a public defender rather than as private appointed counsel.
 
 
 5
 Farris puts on a different spin. He implies that the Superior Court removed Billar as counsel for cause. The Superior Court then substituted the Public Defender's Office. Billar, who was now looking for work, sought employment with the Public Defender's Office and got the job. The Public Defender's Office, meanwhile, needed to find an attorney to represent Farris. Remarkably, the Public Defender's Office assigned Billar to Farris' case. More remarkable still, the very same Superior Court Judge who previously had removed Billar for cause permitted Billar to reappear as Farris' public defender and take the case to trial.
 
 
 6
 The record contains every indication that the Arizona Court of Appeals' account is correct, and Farris' odd account is not. Indeed, the first time Farris criticized Billar's performance (Farris felt pretrial discovery was not proceeding rapidly enough) appears to have been December 10, 1987, two months after the October 27, 1987 substitution.
 
 
 7
 Farris appears to believe that public defenders simply are not as good as "money lawyers." He argues that at some point in the above-described process for appointing him counsel, the trial court violated his Sixth Amendment rights. Construing his claim liberally, Jacobsen v. Filler, 790 F.2d 1362, 1364 n. 4, (9th Cir. 1986), there are perhaps three distinct arguments he is making.
 
 1. Denial of counsel
 
 8
 First, there is the argument that Farris was denied counsel in the constitutional sense because Billar, the attorney who represented him at trial, was not authorized to represent him. As Farris tells it, the Public Defender's Office was not authorized to represent him anytime after the May 4, 1987 order. Nor was Billar authorized to represent him anytime after October 27, 1987, when Billar was discharged as counsel in his private capacity. Therefore, after October 27, 1987 Farris had no counsel.
 
 
 9
 This is sophistry. Clearly, Farris at all times was represented by counsel. The October 27, 1987 order discharging Billar as counsel in his private capacity was, in substance, an order substituting Billar as counsel on behalf of the Public Defender's Office. The minute entry of November 12, 1987 shows Billar as counsel and as a member of the Public Defender's Office.
 
 
 10
 In any event, even if the October 27 order contravened the May 4 order, we see no reason why, on petition for habeas corpus, a federal court must prefer the May 4 order and allow it to somehow "trump" the October 27 order authorizing Billar to appear as Farris' counsel. These matters of local procedure do not allege a federal violation remediable on a petition for habeas corpus.
 
 2. Ineffective Assistance
 
 11
 A second argument is that Farris was deprived of effective assistance of counsel because, after October 27, Billar was associated with the Public Defender's Office, and the May 4 order held that only "private court-appointed attorneys" were competent to represent indigent defendants in Maricopa County.
 
 
 12
 This somewhat metaphysical argument is deeply flawed. If, in his capacity as "private court-appointed attorney," Billar was competent to represent Farris, we cannot see how Billar could become incompetent simply by associating himself with the Public Defender's office. The touchstone of an attorney's competence is not the firm name under which he practices.
 
 
 13
 We do not know why, on May 4, the presiding judge of the criminal division of the Superior Court of Maricopa County considered the members of the Public Defender's Officer less competent than private criminal attorneys who also earn their fees though court appointments. Surely an individualized determination would be necessary to determine whether joining the Public Defender's Office interfered, in this case, with Billar's competent performance, and there is no showing on this record that Billar provided constitutionally ineffective representation.
 
 
 14
 3. "Irreconcilable Conflict"
 
 
 15
 A third argument is suggested by Farris' citation to Brown v. Craven, 424 F.2d 1166 (9th Cir. 1970). Farris was dissatisfied with the degree of pretrial discovery and investigation that Billar had conducted by December 10, 1987, and he complained about this to the trial court. Brown held "that to compel one charged with a grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever." Id. at 1170. Brown went on to explain, however, that
 
 
 16
 a court is not required to provide an indigent accused with any particular attorney whom he may desire.... The problem arises because the state court did not, in our opinion, take the necessary time and conduct such inquiry as might have eased [the defendant's] dissatisfaction, distrust, and concern. And, we think it not unreasonable to believe that had Brown been represented by counsel in whom he had confidence he would have been convicted, if at all, [of a lesser crime].
 
 
 17
 Id.
 
 
 18
 Here the trial court conducted a lengthy colloquy with Farris about Billar's performance. Farris explained his fear that no public defender could be adequately prepared by the scheduled December 28, 1987 trial date. Farris was, to put it mildly, a demanding and "hands-on" client. The trial court patiently explained that Billar was preparing for the case, that Jessica Hoover's relocation to Wisconsin made scheduling interviews with her more difficult, and that Billar and the prosecutor were making necessary arrangements to complete pretrial discovery. The trial court also assured Farris that if Billar was not prepared by December 28, the trial date would be postponed and Farris could renew his motion:
 
 
 19
 Now you've been on record as to the things that you want [Billar] to do. There is no reason to replace him at this time, He is trying to do those things, I'm sure, and he says he's doing it.... [E]very good attorney has a lot of cases, belief [sic] me, and all the attorneys have to juggle the preparation on each of the cases. Quite frankly, the case that is most important at the time is the one that's coming up soonest. So a lot of the preparation gets done right before trial. And that's with every attorney.... Mr. Billar is not against you, believe me.... I think what you are better off doing is waiting until after the interview [with Hoover] is conducted next week.
 
 
 20
 At the time, Farris seemed satisfied with this. He replied "I'll take your advice and do what you say sir."
 
 
 21
 This case is not like Brown. First, Farris' relationship with Billar can hardly be characterized as "irreconcilable conflict." Billar had no objection to continuing to represent Farris, and Farris' objection was directed to the pretrial delays he associated with public defenders generally, not to Billar personally; but of course, Farris has no right to be appointed a "money lawyer." Brown, 424 F.2d at 1170. Second, "[t]he record explicitly reveals that, unlike the summary denial in Brown v. Craven, 424 F.2d at 1169, the court convened a session out of the presence of the jury at which defendant's complaint was aired. The court invited defendant to make a statement, listened to defendant's reasons for desiring new counsel, and found them without merit." Hudson v. Rushen, 686 F.2d 826, 831 (9th Cir. 1982). There was, therefore, no "failure by the trial court to adequately inquire into the reasons for the conflict." Id. Third, in Brown the court found that it was "not unreasonable to believe that had [defendant] been represented by counsel in whom he had confidence he would have been convicted, if at all, of no more than [a much lesser offense]. Here it is not reasonable to so believe." Id. at 831-32 (internal quotations and citation omitted). Indeed, as the trial judge noted with dismay, Farris was fortunate to have gotten off as lightly as he did.
 
 
 22
 We conclude that Farris' claim of improper representation should be rejected.
 
 II. Remaining Claims
 
 23
 Farris argues that the trial court erred in refusing to admit a doctor's report showing the harm done to Hoover. Prosecution and defense counsel stipulated as to the doctor's testimony, so there was no need to present the report. Moreover, exclusion of evidence must be "so prejudicial as to jeopardize the defendant's due process rights" before we will grant habeas relief. Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990). Exclusion of the report would not meet this demanding standard.
 
 
 24
 Farris argues that the trial court erred in allowing in evidence a photograph of the victim and her injuries. Allegations of state evidentiary errors are not cognizable on habeas review. Estelle v. McGuire, 112 S. Ct. 475, 480 (1991).
 
 
 25
 Farris argues that there was constitutional error because the prosecution did not disclose a videotape it had of the defendant or photographs taken during booking. The nondisclosure of a one minute videotape of Farris walking away from the camera, or of photographs showing a cut on his face would not have been likely to have any effect on the outcome of the case, and does not amount to a constitutional violation. United States v. Agurs, 427 U.S. 97, 109-112 (1976).
 
 
 26
 Farris also says his constitutional rights were violated because the police failed to take fingerprint evidence from the baton used to inflict wounds on Hoover. But in the absence of a showing of bad faith, which was not established, there is no violation when police fail to gather certain evidence. Arizona v. Youngblood, 109 S. Ct. 333, 337 (1988); Miller v. Vasquez, 868 F.2d 1116, 1120 (9th Cir. 1989).
 
 
 27
 Farris says his rights were violated because he was prevented from presenting evidence about a brain injury sustained before he committed the assault. Arizona has no diminished capacity defense. The only mens rea type defense would be a M'Naughten insanity defense, and none of Farris' medical evidence suggests his dysfunction was so great that it would satisfy M'Naughten's elements. Because none of Farris' proffered evidence would come close to showing that he lacked the capacity to form the mens rea necessary to commit the crime, it was not constitutional error to exclude it. Tinsley, 895 F.2d at 530.
 
 
 28
 Finally, Farris argues that the trial court erred in enhancing his sentence. Allegations of state law sentencing errors are not cognizable on habeas review. Miller, 868 F.2d at 1118.
 
 
 29
 We AFFIRM the order of the district court denying the petition for writ of habeas corpus.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R. App. P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This deposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3