Russell A. **TINSLEY**,
Petitioner–Appellant,

v.

Bob **BORG**, Respondent–Appellee.

No. 87–2238.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 30, 1989.

Decided Jan. 19, 1990.

Richard R. Wiebe, Brobeck, Phleger & Harrison, San Francisco, Cal., for petitioner-appellant.

Gerald A. Engler, Deputy Atty. Gen., State of Cal., San Francisco, Cal., for respondent-appellee.

Before WALLACE, POOLE and HALL, Circuit Judges.

WALLACE, Circuit Judge:

Tinsley, a state prisoner, appeals from the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition without an evidentiary hearing. Tinsley contends that he was denied a fair state court trial because of juror misconduct, an erroneous evidentiary ruling, and ineffective assistance of counsel. The district court had jurisdiction under 28 U.S.C. § 2241. We have jurisdiction over Tinsley's timely appeal pursuant to 28 U.S.C. § 2253. We affirm.

I

On July 30, 1984, Tawnya, a 17–year–old minor, met Tinsley for the second time when she went to a friend's apartment to pick up some toys for her niece. The box of toys was heavy, and Tawnya asked Tinsley to help carry them. Tinsley replied that he had to go to work, but agreed to take the toys to his nearby apartment and

help her carry them home after work later that night.

At Tinsley's apartment that night, Tawnya accepted a drink of brandy and some cocaine. When she said she had to return home, Tinsley prevented her from leaving, struggled with her and hit her, forcibly disrobed her, raped her twice and committed other sexual acts. Early the next morning, Tinsley allowed her to leave.

At trial, Tinsley's defense was that the charged acts were consensual. He testified that he actually left the apartment several times while Tawnya was there, so she was free to leave. He testified that he hit her only to prevent her from passing out because of the cocaine.

The jury found Tinsley guilty of forcible rape, oral copulation, penetration with a foreign object, assault by means of force likely to produce great bodily injury, and false imprisonment. After exhausting his available state remedies, Tinsley unsuccessfully filed a habeas corpus petition in federal court, and this appeal followed.

## II

We first consider the threshold jurisdictional issue: whether Tinsley's appeal was timely. We review our jurisdiction de novo. *Buffalo v. Sunn,* 854 F.2d 1158, 1161 (9th Cir.1988).

To appeal a district court's denial of a petition for habeas corpus, the applicant must file a timely notice of appeal (here 30 days) *and* obtain a certificate of probable cause from the district court. 28 U.S.C. § 2253; Fed.R.App.P. 4(a) & 22(b); *see, e.g., Pettibone v. Cupp,* 666 F.2d 333, 334 (9th Cir.1981). If the district judge denies the certificate, the applicant may then request it from the court of appeals. Fed.R. App.P. 22(b).

The rules do not explicitly state the order in which an applicant should take these steps. The Second Circuit has suggested that "the more appropriate procedure is for an applicant to take an appeal by filing a timely notice of appeal, seek a certificate of probable cause, and then proceed with the appeal," *Latella v. Jackson,* 817 F.2d 12,

13 (2d Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 708, 98 L.Ed.2d 658 (1988), but has stated that it "would not dismiss a timely appeal merely because an application for a certificate was made (or indeed granted) prior to the time that the notice [of appeal] was filed." *Id.*

▮ The problem here is that after Tinsley filed his notice of appeal, he timely filed a motion to reconsider. This effectively nullified his notice of appeal. *See* Fed.R. App.P. 4(a)(4); 9 J. Moore & R. Ward, *Moore's Federal Practice* ¶ 203.11 at 3–50 (1989). The Rule 59(e) motion to alter or amend the judgment effectively revives the district court's jurisdiction. *See id.; see also Tripati v. Henman,* 845 F.2d 205, 205–06 (9th Cir.1988). The time to file a notice of appeal begins to run after the entry of the order granting or denying the Rule 59(e) motion, and a new notice must be filed. Fed.R.App.P. 4(a)(4). He did not do so.

▮ We nonetheless have jurisdiction to hear Tinsley's appeal because we treat his timely pro se motion for a certificate of probable cause as a timely notice of appeal. Numerous circuits, including our own, have "held that a request for a certificate of probable cause can serve 'double-duty' as notice of appeal." *McMillan v. Barksdale,* 823 F.2d 981, 983 (6th Cir.1987) (collecting cases); *Poe v. Gladden,* 287 F.2d 249, 251 (9th Cir.1961).

## III

We review de novo the district court's denial of Tinsley's habeas corpus petition. *Carter v. McCarthy,* 806 F.2d 1373, 1375 (9th Cir.1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

Tinsley contends that he was denied a fair trial because one juror, Smith, was biased. The sixth amendment right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). "Even if 'only one juror is unduly biased or prejudiced,' the defendant is denied his constitutional right to an im-

partial jury." *United States v. Eubanks,* 591 F.2d 513, 517 (9th Cir.1979) (*Eubanks*), quoting *United States v. Hendrix,* 549 F.2d 1225, 1227 (9th Cir.) (*Hendrix*), cert. denied, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).

Smith testified during voir dire that she worked for about 30 years as a psychiatric social worker, that she occasionally would deal with crisis cases, that she was trained to deal with rape victims, and that, notwithstanding the nature of the charges involved in Tinsley's case, she would be able to be a fair juror. She said that she did not recall counseling any rape victims.

During voir dire in a subsequent misdemeanor trial, Smith revealed that, contrary to her testimony during Tinsley's voir dire, she had testified in court on behalf of a rape victim, that it had been her first time on the witness stand, and that she had found the experience "anxiety provoking."

Tinsley's counsel moved for a new trial on the ground of juror misconduct. At a subsequent hearing, Smith was questioned by both the prosecution and the defense. Smith admitted her error in failing to reveal her counseling of a rape victim and stated that she had worked with one rape victim intermittently for approximately a year and a half. She stated that although she felt no emotional attachment to the rape victim, testifying in her behalf "wasn't easy." Approximately three years before Tinsley's trial, Smith had testified for 10 to 15 minutes at the alleged rapist's trial, opining that her patient had in fact been raped and was suffering trauma as a result. She stated that she "just didn't recall [the rape counseling] at that particular point ... and remembered it later ... during the course of the trial." She testified that she could not remember whether she mentioned the information to anyone, and the record discloses no evidence of her doing so. She testified that she had been fair as a juror and had no recollection of thinking about the prior counseling episode during deliberations.

After the testimony, Tinsley's counsel admitted that "in this particular case, Ms. Smith was very candid with us about the situation and her subjective feeling was overall ... that she was in her mind fair." Counsel contended that she might have been biased nonetheless, and thus a new trial was warranted.

At the conclusion of this hearing, the state trial judge, without comment, denied the motion for a new trial. The state court of appeals found that the record supported "the implied determination of the trial court that no juror misconduct occurred and that Ms. Smith was able to, and did, in fact, function as a fair and impartial juror."

### A.

The Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (*Phillips*). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* The remedy for allegations of juror partiality is a post-trial hearing in which the defendant has the opportunity to prove bias. *Id.*

> The Supreme Court has explained that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984) (*McDonough*). This standard applies in civil and criminal cases. *See id.; United States v. Aguon,* 851 F.2d 1158, 1170 (9th Cir.1988) (en banc).

■ When such a post-trial hearing is held, the state court's findings are entitled to a presumption of correctness on federal habeas corpus review. 28 U.S.C. § 2254(d);

*Phillips,* 455 U.S. at 218, 102 S.Ct. at 946. This rule applies to the factual findings of both state trial and appellate courts. *Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam) (*Spain*); *Sumner v. Mata,* 455 U.S. 591, 597–98, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982) (per curiam) (*Mata II*); *Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981) (*Mata I*). This obtains unless one of the circumstances listed in 28 U.S.C. § 2254(d)(1) to (7) exists, unless the determination is not fairly supported by the state court record, or unless the petitioner shows by convincing evidence that the factual determination by the state court is erroneous. 28 U.S.C. § 2254(d); *Mata II,* 455 U.S. at 597–98, 102 S.Ct. at 1306–07; *Mata I,* 449 U.S. at 550–51, 101 S.Ct. at 770–71.

The Supreme Court has made it clear that on federal habeas corpus review, the question of the partiality of an individual juror is not a question of mixed law and fact, but "[r]ather it is plainly one of historical fact." *Patton v. Yount,* 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (*Yount*). This determination is "essentially one of credibility, and therefore largely one of demeanor." *Id.* at 1038, 104 S.Ct. at 2891. The Court has stated that "[d]emeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a ... juror is saying.... Demeanor, inflection, the flow of the questions and answers can make confused and conflicting utterances comprehensible." *Id.* at 1038 n. 14, 104 S.Ct. at 2892 n. 14. Thus, "the trial court's resolution of such questions is entitled ... to 'special deference.'" *Id.* at 1038, 104 S.Ct. at 2892; *Knaubert v. Goldsmith,* 791 F.2d 722, 727 (9th Cir.) (*Knaubert*), *cert. denied,* 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986) ("[N]o sort of factual finding ... is more appropriate for deferential treatment than is a state court's credibility determination."). The findings of state trial and appellate courts on juror impartiality deserve "a 'high measure of deference.'" *Spain,* 464 U.S. at 120, 104

S.Ct. at 456, *quoting Mata II,* 455 U.S. at 598, 102 S.Ct. at 1307.

When a state trial court holds a post-trial hearing, "not every finding of fact need be stated on the record in infinite detail and clarity. In certain circumstances we will recognize that a factual determination is implicit in the actions taken by a state court." *Knaubert,* 791 F.2d at 727. Such implicit findings may, in appropriate circumstances, satisfy the requirement that to merit a presumption of correctness, a state court's factual findings must be "evidenced by a written finding, written opinion, or other reliable and adequate written indicia." 28 U.S.C. § 2254(d); *see Knaubert,* 791 F.2d at 727.

The state contends that the California state courts have made a factual finding, entitled to a presumption of correctness, that juror Smith was not actually biased. The state suggests that the state trial court's denial of Tinsley's motion for a new trial, after a lengthy hearing on the question of Smith's bias, necessarily implies a finding that Smith was not actually biased. Indeed, defense counsel at that hearing conceded as much, stating that "in this particular case, Ms. Smith was very candid with us about the situation and her subjective feeling was overall ... that she was in her mind fair."

Tinsley responds, however, that it is unclear whether the court believed Smith's statement that she had not recalled the events in question during voir dire, whether the court determined Smith would or would not have properly been challenged for cause had she disclosed the truth on voir dire, and whether the trial court applied the correct legal standard.

"[W]here the record does not indicate the standard applied by a state trial judge, he is presumed to have applied the correct one." *Wainwright v. Witt,* 469 U.S. 412, 431, 105 S.Ct. 844, 856, 83 L.Ed.2d 841 (1985). *Witt* provides a helpful parallel. In *Witt,* a juror was excused for cause on voir dire after examination and a challenge by the prosecutor. The judge's ruling, in its entirety, was "All right. Step down." *Id.* at 416, 105 S.Ct. at 848. The relevant

record consisted of the transcript of the examination of the juror and the judge's ruling. The Court concluded that the trial court's factual finding that the juror was biased was " 'evidenced by a written finding, written opinion, or other reliable and adequate written indicia,' " and thus entitled to a presumption of correctness. *Id.* at 430, 105 S.Ct. at 855, *quoting* 28 U.S.C. § 2254(d). The Court found it unnecessary for the judge to state, for the record, his conclusion that the juror was biased, or his reasoning. *Id.* This finding was "evident from the record." *Id.*

*Witt* illustrates the sufficiency of the state trial court proceedings before us for purposes of 28 U.S.C. § 2254(d). Moreover, here our consideration of state court factual findings is not limited to the trial court, for the state appellate court made lengthy and detailed factual findings. Even though the state appellate court is, in a sense, in no better position than we are to evaluate the state trial court record, 28 U.S.C. § 2254(d) requires us to accord the same presumption of correctness to its factual findings. *Spain,* 464 U.S. at 120, 104 S.Ct. at 456; *Mata II,* 455 U.S. at 597–98, 102 S.Ct. at 1306–07; *Mata I,* 449 U.S. at 545–47, 101 S.Ct. at 768–69. This rule stems from an "interest in federalism recognized by Congress in enacting § 2254(d)." *Mata I,* 449 U.S. at 547, 549–50, 101 S.Ct. at 769, 770–71.

The state appellate court found that the record supports the trial court's implied factual determination "that no juror misconduct occurred and that Ms. Smith was able to, and did, in fact, function as a fair and impartial juror." That court further held that the record as a whole clearly rebutted any presumption of prejudice that might arise. The court specifically found that

> the evidence that misconduct occurred is extremely weak. It is also evident that the misconduct, if any, consisted of simple forgetfulness rather than deliberate concealment or deception. Finally, in view of the lack of Ms. Smith's personal attachment to the previous rape victim and her assertive assurance that she had no bias and could fairly determine the

guilt or innocence of appellant, the probability of actual prejudice resulting from the misconduct is virtually nil. This latter aspect clearly separates the present case from instances where the juror herself was a previous rape victim and consciously concealed that fact during voir dire in order to participate in the determination of the matter.

We accord these factual findings a presumption of correctness under 28 U.S.C. § 2254(d). We conclude that the record as a whole fairly supports these findings, and that none of the circumstances enumerated in section 2254(d)(1) to (7) are present. *See Mata I,* 449 U.S. at 551, 101 S.Ct. at 771. Nor has Tinsley met the burden of persuading us by convincing evidence that these factual determinations were erroneous. In reaching this conclusion, we are mindful of the "special deference" to be accorded a state court's credibility findings, *see Yount,* 467 U.S. at 1038 & n. 14, 104 S.Ct. at 2892 & n. 14; *Knaubert,* 791 F.2d at 727, as well as the " 'high measure of deference' " to be accorded its findings on juror impartiality. *Spain,* 464 U.S. at 120, 104 S.Ct. at 456, *quoting Mata II,* 455 U.S. at 598, 102 S.Ct. at 1307. Although Smith's responses at voir dire failed to reveal her experience counseling and testifying for the rape victim 3 years earlier, we accept the California courts' determination that Smith did not deliberately conceal information, but merely forgot. We also accept the California courts' determination that Smith had no actual bias which would have provided a valid basis for a challenge for cause. *See McDonough,* 464 U.S. at 556, 104 S.Ct. at 850.

### B.

■ Tinsley raises an additional challenge, however, to juror Smith's impartiality. Even if the record does not require us to find actual bias, he suggests that these circumstances require us to find implied or presumed bias. *See id.* at 556–57, 104 S.Ct. at 850 (Blackmun, J., concurring) & 558 (Brennan, J., concurring in the judgment); *Phillips,* 455 U.S. at 222–24, 102 S.Ct. at

948–49 (O'Connor, J., concurring) & 231 (Marshall, J., dissenting); *Eubanks*, 591 F.2d at 517; *United States v. Allsup*, 566 F.2d 68, 71–72 (9th Cir.1977) (*Allsup*). Such implied or presumed bias, he suggests, could also have provided a valid basis for a challenge for cause. *See McDonough*, 464 U.S. at 556, 104 S.Ct. at 850.

The Supreme Court has never explicitly adopted or rejected the doctrine of implied bias. However, the Court did confront allegations of implied juror bias in *Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950). There, the defendant, who was convicted of criminal contempt for failure to appear before the House Un–American Activities Committee, argued that the jury which convicted him should be presumed biased because it was composed primarily of federal government employees. Such employees were subject to an Executive Order which provided for their discharge upon reasonable grounds for belief of their disloyalty to the government. The Court, however, refused to find implied bias. *Id.* at 171–72, 70 S.Ct. at 523. In so holding, it cited two previous cases where it had held that government employees, barring actual bias, were not automatically disqualified from serving on a jury in a case where the government is a party. *Id.* at 167, 70 S.Ct. at 521, *citing Frazier v. United States*, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948), and *United States v. Wood*, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936).

In two earlier cases, we found that bias could be implied or presumed from the "potential for substantial emotional involvement, adversely affecting impartiality," inherent in certain relationships. *Allsup*, 566 F.2d at 71; *see also Eubanks*, 591 F.2d at 516–17.

In *Allsup*, two prospective jurors in a bank robbery trial were employees of the bank that was robbed but worked at a different branch from the one that was robbed. The two stated on voir dire that they could decide the case fairly, and served on the jury after the district court found them to be unbiased and rejected a defense challenge for cause. 566 F.2d at 71. We reversed the conviction. We held that despite their protestations of impartiality and the district court's finding of impartiality, the employees should have been presumed biased and excused for cause. Although they had not themselves been robbed, the jurors' employment relationship with the robbed bank and their "reasonable apprehension of violence" because of the substantial risk of violence from bank robbers created a "substantial probability" that they could not be impartial. *Id.* at 71–72.

In *Eubanks*, a heroin conspiracy trial, one juror failed to disclose on voir dire that two of his sons were serving prison terms for heroin-related crimes. 591 F.2d at 516. We presumed that the juror was biased because of his sons' involvement with heroin. *Id.* at 517.

The question we must decide is whether this case presents an equally compelling situation. In other words, does this case present a relationship in which the "potential for substantial emotional involvement, adversely affecting impartiality," is inherent? *See Eubanks*, 591 F.2d at 517; *Allsup*, 566 F.2d at 71. Or, as the Fourth Circuit has put it, is this one of "those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances"? *Person v. Miller*, 854 F.2d 656, 664 (4th Cir.1988) (*Miller*), *cert. denied*, —— U.S. ——, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989).

Prudence dictates that courts answering this question should hesitate before formulating categories of relationships which bar jurors from serving in certain types of trials. *See United States v. Brown*, 644 F.2d 101, 104–05 (2d Cir.), *cert. denied*, 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). Only in "extreme" or "extraordinary" cases should bias be presumed. *Phillips*, 455 U.S. at 222, 223 n. *, 102 S.Ct. at 948, 949 n. * (O'Connor, J., concurring). Instead of formal categorization, the Supreme Court has emphasized the existence of safeguards against actual

bias. *See id.* In most situations, voir dire, "the method we have relied on since the beginning," should suffice to identify juror bias. *Yount,* 467 U.S. at 1038, 104 S.Ct. at 2892. In cases where a juror's answer makes thorough voir dire impossible, a post-trial hearing should accomplish the same result. *See McDonough,* 464 U.S. at 556, 104 S.Ct. at 850; *Phillips,* 455 U.S. at 217–18, 102 S.Ct. at 946.

Not only has the Supreme Court emphasized the actual bias analysis, but also important policy concerns counsel hesitation in implying bias. Initially, there is an obvious problem where reviewing courts invoke the doctrine of implied bias to circumvent the presumption of deference due trial court factual findings on the existence of actual bias. 28 U.S.C. § 2254(d); *Phillips,* 455 U.S. at 218, 102 S.Ct. at 946. The Third Circuit has properly identified an additional danger in the implied bias doctrine:

> To allow trial judges and prosecutors to determine juror eligibility based solely on their perceptions of the external associations of a juror threatens the heretofore guarded right of an accused to a fair trial by an impartial jury as well as the integrity of the judicial process as a whole. Taken to its illogical conclusion, the government's position would sanction, *inter alia,* the summary exclusion for cause of NAACP members from cases seeking the enforcement of civil rights statutes, Moral Majority activists from pornography cases, Catholics from cases involving abortion clinic protests, members of NOW from sex discrimination cases, and subscribers to Consumer Reports from cases involving products liability claims.

*United States v. Salamone,* 800 F.2d 1216, 1225 (3d Cir.1986) (*Salamone*) (footnote omitted).

An examination of the types of cases where other courts have grappled with the issue of implied bias is further instructive, although we do not necessarily endorse these cases' holdings. Courts have found implied bias where the juror is apprised of such prejudicial information about the defendant that the court deems it highly unlikely that he can exercise independent judgment even if the juror states he will. *E.g., Leonard v. United States,* 378 U.S. 544, 544–45, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964) (per curiam); *Willie v. Maggio,* 737 F.2d 1372, 1379–81 (5th Cir.) (collecting cases), *cert. denied,* 469 U.S. 1002, 105 S.Ct. 415, 83 L.Ed.2d 342 (1984); *but see United States v. Jones,* 707 F.2d 1169, 1173 (10th Cir.) (refusing to find a sixth amendment violation where a jury foreman knew defendant as child and allegedly made false accusations against him), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983). This case does not present such a situation. The existence of certain relationships between the juror and the defendant also may support such a presumption. *See United States v. Perkins,* 748 F.2d 1519, 1532–33 (11th Cir.1984). There is no such relationship in this case.

Courts have been willing to presume bias where a juror or his close relatives have been personally involved in a situation involving a similar fact pattern. *E.g., Eubanks,* 591 F.2d at 516–17 (juror, whose sons were currently imprisoned for heroin-related crimes, sitting in heroin conspiracy trial); *Jackson v. United States,* 395 F.2d 615, 617–18 (D.C.Cir.1968) (juror previously involved in "love triangle" similar to the one in issue at trial); *United States ex rel. De Vita v. McCorkle,* 248 F.2d 1, 8 (3d Cir.) (en banc) (juror a robbery victim, defendant convicted of robbery), *cert. denied,* 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957). Again, such a situation is not present here. Justice O'Connor, concurring in *Phillips,* gave several hypothetical examples of extreme situations where a presumption of bias might be appropriate: where it is revealed "that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." 455 U.S. at 222, 102 S.Ct. at 948. Again, none of these extreme examples describe this case.

On the other hand, courts have declined to find implied bias when a juror was personally acquainted with a witness provided

no actual bias existed. *E.g., United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir.1986) (jurors knew government witnesses); *see also United States v. Allred*, 867 F.2d 856, 870 (5th Cir.1989) (juror had social contact with agent of investigating agency involved in prosecution) (implied bias not raised); *United States v. O'Neill*, 767 F.2d 780, 784–85 (11th Cir.1985) (juror friendship with narcotics officers, defendants convicted of drug smuggling) (implied bias not raised).

■ Courts have also declined to find implied bias from a juror's employment alone even where closely related to the substance of the case. *E.g., Williams v. United States*, 418 F.2d 372, 376–77 (10th Cir.1969) (in armed bank robbery trial, juror not presumed biased because associated with branch of supermarket, another branch of which was recently robbed). We will not presume bias merely because a juror works in law enforcement or is a federal government employee. *United States v. Le Pera*, 443 F.2d 810, 812 (9th Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971); *see also United States v. Caldwell*, 543 F.2d 1333, 1347 (D.C.Cir. 1974) (refusing to presume biased a policeman's relative), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *Mikus v. United States*, 433 F.2d 719, 723–24 (2d Cir.1970) (in criminal trial, juror former police officer). The Third Circuit has held that membership in the National Rifle Association does not per se disqualify jurors in a case involving various firearms charges; rather, demonstration of actual juror bias or beliefs is required. *Salamone*, 800 F.2d at 1224–27.

Tinsley presents a strong argument that this case presents an extreme situation where implied bias may justifiably be found. Over a year-and-a-half period, juror Smith had counseled a rape victim suffering from rape trauma. This was part of Smith's job as a psychiatric social worker. She testified in the rape victim's behalf, and gave testimony as to the victim's credibility—the very issue at the center of Tinsley's defense here. Where a juror has such close and sympathetic ties to a rape victim,

Tinsley argues, there is a relationship in which the "potential for substantial emotional involvement," adversely affecting impartiality, is inherent. *See Eubanks*, 591 F.2d at 517; *Allsup*, 566 F.2d at 71. Tinsley contends that it is thus "highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Miller*, 854 F.2d at 664.

Nevertheless, we conclude that these circumstances do not warrant a presumption of bias. Neither juror Smith herself nor a close relative had been a rape victim or rapist. There was no personal connection between Smith and the defendant, the victim, or any other witness. Smith had no prejudicial information about the defendant himself. This situation differs significantly from that presented in *Allsup*. In *Allsup*, the jurors in question worked for the very bank which had been robbed. 566 F.2d at 71. Not only was there this employment relationship, but as bank employees they had a well-founded, "reasonable apprehension of violence" by offenders such as the defendant because "violence, or the threat of violence, is a frequent concomitant of the offense" of bank robbery. *Id.* at 71–72. This combination added up to presumed bias. *Id.* at 72. Here, by contrast, a person who counsels rape victims does not experience the actual threat of rape merely by virtue of that type of employment. *See id.* at 71 n. 1. In addition, the professional training of a psychiatric social worker makes such a juror less likely to be prejudiced by contact with a rape victim. A professional psychiatric social worker develops skills of detachment—indeed, Smith gave testimony to that effect about her own training. This case does not present a juror routinely employed to work with rape victims. The rape victim was one client out of a 30–year career. Neither the close employment connection nor the threat of danger involved in *Allsup* is present here. We therefore do not find implied bias in these circumstances.

IV

■ Tinsley contends that the district court was required to hold an eviden-

tiary hearing on his juror bias claim. An evidentiary hearing on a habeas corpus petition is required whenever a petitioner's allegations, if proved, would entitle him to relief, and no state court trier of fact has, after a full and fair hearing, reliably found the relevant facts. *Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963) (*Townsend*); *Van Pilon v. Reed,* 799 F.2d 1332, 1338 (9th Cir. 1986) (*Van Pilon*). As previously discussed, however, the state courts have reliably found the relevant facts. 28 U.S.C. § 2254(d); *Spain,* 464 U.S. at 120, 104 S.Ct. at 456, *Mata II,* 455 U.S. at 597–98, 102 S.Ct. at 1306–07; *Mata I,* 449 U.S. at 545–47, 101 S.Ct. at 768–69. The district court did not abuse its discretion in refusing to grant an evidentiary hearing. *Cf. Hard v. Burlington Northern Railroad Co.,* 870 F.2d 1454, 1461–62 (9th Cir.1989) (refusing to grant an evidentiary hearing regarding juror misconduct).

Tinsley also contends that the district court erred in failing to conduct an evidentiary hearing on his claim that juror Smith introduced extraneous information into the jury deliberations in the form of statements about her professional training and experience with rape victims. However, nowhere in his habeas corpus petition does Tinsley allege that Smith actually introduced extrinsic information by referring to her past experiences during deliberations. At most, Tinsley alleges that this was Smith's motive for deliberately concealing her past experience, but there is simply no allegation that she actually introduced such information. Tinsley thus fails to satisfy the first prong of the test for when an evidentiary hearing is required: he has failed to provide allegations which, if proven, would establish his right to relief. *See Townsend,* 372 U.S. at 312, 83 S.Ct. at 756; *Van Pilon,* 799 F.2d at 1338. The district court was not required to conduct a hearing on a claim that was not presented. *See Hendrix,* 549 F.2d at 1227–28 (district court necessarily guided by content of allegations in deciding whether to conduct evidentiary hearing).

## V

 Tinsley contends that the state trial judge erred by improperly excluding proffered defense testimony. "Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Lincoln v. Sunn,* 807 F.2d 805, 816 (9th Cir. 1987). The state court's decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due process rights. *Miller v. Stagner,* 757 F.2d 988, 994 (9th Cir.) (*Stagner*), *amended on other grounds,* 768 F.2d 1090 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 1049, 89 L.Ed.2d 577, 579 (1986). To evaluate whether exclusion of evidence reaches constitutional proportions, we should consider five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. *Id., citing Perry v. Rushen,* 713 F.2d 1447, 1452–53 (9th Cir.1983) (*Perry*), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). We must then balance the importance of the evidence against the state interest in exclusion. *Id.*

 The proffered defense testimony would have come from Lahark, Tinsley's girlfriend and the mother of their infant child, concerning a pretrial conversation she had with Tawnya. Lahark was the first witness called by the defense. On direct examination, no question was asked regarding pretrial statements which Tawnya allegedly made to her. On cross-examination, Lahark testified that she had talked to Tawnya only once, several days before the alleged rape occurred. There was no testimony on this issue during redirect examination.

Near the end of the defense case, Tinsley attempted to recall Lahark to elicit testimony regarding an alleged conversation between Lahark and Tawnya after the rape occurred, a month prior to trial. Defense counsel made an offer of proof that Lahark would testify to a conversation in which

Tawnya told her that had she known how the case would proceed, the time it would involve, and the severity of the punishment Tinsley would face, she would not have brought charges against him. Tawnya felt, however, that the matter was out of her control, and the prosecution was forcing her to testify. Lahark also would testify that this conversation occurred in a saloon called the Crossroads Bar.

The main purpose of this testimony was to impeach Tawnya's testimony on whether she testified voluntarily and whether she had been to the Crossroads Bar. The prosecution objected to the proffered testimony on hearsay and relevancy grounds.

The question of the voluntariness of Tawnya's testimony was raised when she failed to appear in court on the first day of trial. The following day she did appear, subject to a subpoena and a body attachment. The trial court held a hearing to determine whether her testimony was voluntary. Tawnya testified under oath that her trial testimony was being given freely and voluntarily, with no promises or pressure by the police or the prosecution. Tawnya never stated during trial, nor was she ever asked, whether she had ever been to the Crossroads Bar.

Applying the *Stagner* balancing test, we conclude that exclusion of Lahark's supplemental testimony did not violate Tinsley's due process rights. *See Stagner*, 757 F.2d at 994–95. First, the proffered evidence was of little probative value on the central issue of Tinsley's guilt or innocence. The proffered testimony involved events occurring well after the rape. The victim never stated whether she had been to the Crossroads Bar, so the proffered testimony would have little probative value on the issue of her credibility. While the proffered testimony may have been admissible to show the victim's state of mind at the time of the statements, there was direct testimony at trial about the victim's willingness to testify.

Second, the reliability of the proffered testimony is highly questionable because this testimony was not raised in the direct or redirect examination of Lahark, and be- cause the testimony was inconsistent with Lahark's prior testimony that she had spoken to the victim only once, at a different place and time from the events in the proffered testimony.

Two *Stagner* factors may weigh in Tinsley's favor: whether the proffered evidence was capable of evaluation by the trier of fact, and whether it is the sole evidence on the issue. On the whole, however, it appears that the proffered evidence is of only slight importance to Tinsley's case, especially in light of the defense's failure to elicit it during Lahark's direct and redirect examinations.

In contrast, the state interest in excluding this testimony was substantial. We "must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, and in excluding unreliable or prejudicial evidence." *Stagner*, 757 F.2d at 995, *citing Perry*, 713 F.2d at 1453. Several state rules are implicated— not only the rules of relevancy and hearsay upon which the trial court denied relief, but also Cal.Evid.Code § 778 (West 1966), which, as pointed out by the district court and state appellate court, confers great discretion on the trial judge in deciding whether to allow the recall of a witness who has already testified and been excused.

We conclude, therefore, that the district court properly applied the balancing test in holding that the evidence could be excluded. The state court's ruling did not violate Tinsley's due process rights.

## VI

Finally, Tinsley contends that he was denied effective assistance of counsel at trial. Ineffective assistance of counsel is reviewed de novo. *Weygandt v. Ducharme*, 774 F.2d 1491, 1492–93 (9th Cir. 1985). The sixth amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

To prevail on a claim that counsel's assistance was so defective as to require reversal of a conviction, a defendant must

show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. The proper standard for evaluating attorney performance is whether the assistance was reasonably effective under the circumstances. *Id.* at 690, 104 S.Ct. at 2065–66. Judicial scrutiny of defense counsel's performance must be "highly deferential," and a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. at 2065. Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Tinsley makes several allegations of prejudicial error by his trial attorney. First, he claims counsel failed to cross-examine Tawnya adequately, specifically with respect to whether Tinsley ever left his apartment during the night of the alleged rape. Tinsley tried to demonstrate that he left her alone in the apartment while he went to trade his television set for some money to buy drugs and that she therefore had plenty of opportunity to leave. The record reveals, however, that Tawnya was thoroughly cross-examined and that she was in fact questioned about Tinsley's "TV alibi."

▮ Tinsley also contends that his lawyer failed to question Tawnya adequately on her failure to appear in court the first day of trial, to ask Lahark about the conversation with Tawnya, and to question another witness regarding the toys that Tawnya asked Tinsley to carry for her. Even if these allegations constitute deficient performance, Tinsley fails to prove prejudice. *See id.* at 693, 104 S.Ct. at 2067. Tawnya's failure to appear in court and an alleged conversation between Tawnya and Lahark after the alleged rape are both peripheral events that occurred after the alleged crime. Therefore, there is no reasonable probability that the result of the proceeding would have been different had

counsel questioned these witnesses on these issues. *See id.* at 694–95, 104 S.Ct. at 2068. Similarly, the question of who discovered the box of toys on the day of the rape is a peripheral matter. Hence, counsel's failure to question the witness regarding this issue does not create a reasonable probability of a different result so as to undermine confidence in the outcome. *See id.*

▮ Tinsley also contends that his lawyer was ineffective because he failed to call certain witnesses. The three witnesses that Tinsley alleges failed to testify on his behalf were Glover, Jones, and Roberson. Glover and Jones in fact testified. Tinsley fails to show prejudice arising from the fact that the prosecution rather than the defense called Jones to testify. Roberson did not testify because defense counsel's investigator was unable to find him. Apparently, Roberson would have testified that he saw Tinsley and Tawnya together on the day of the rape going to Jones's house to pick up some toys. Although this testimony challenges Tawnya's testimony that Tinsley was already in the apartment when she arrived, this evidence is insufficient to create a reasonable probability that the jury would have had a reasonable doubt concerning Tinsley's guilt. *See id.* at 695, 104 S.Ct. at 2068.

▮ Tinsley contends that his trial counsel did not adequately prepare for trial. He claims that counsel did not review the preliminary hearing transcript with him. His lawyer stated at the post-trial hearing, however, that he provided Tinsley with all relevant transcripts from the case. He further stated that he spent a great deal of time in preparation for the case before and during the trial, that he had numerous meetings with Tinsley concerning the case, and that he worked in every way with Tinsley to get witnesses for the case. In addition, counsel's performance throughout the trial demonstrates sufficient preparation and knowledge of the case that "falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

Finally, Tinsley contends that his lawyer failed to question properly the allegedly biased juror, Smith, at the hearing on the motion for new trial, and that he should have questioned other jurors to see whether Smith had any prejudicial influence on them as a result of her alleged bias. Although counsel could have conducted the new trial motion hearing differently, the record indicates that his conduct was reasonable under the circumstances. He engaged in extensive questioning of Smith at the hearing for a new trial. Although counsel also could have questioned the other jurors regarding Smith's influence on their deliberations, his decision not to call the other jurors did not fall outside the wide range of reasonable professional assistance. *See id.* at 689–90, 104 S.Ct. at 2065. Moreover, counsel's performance did not prejudice the outcome, because, as previously discussed, Smith was a fair juror. *Cf. United States v. Schaflander,* 743 F.2d 714, 719 (9th Cir.1984) (finding no ineffective assistance of counsel by attorney's failure to move for a mistrial on the ground of prosecutorial misconduct where there was found to be no such misconduct), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985).

AFFIRMED.