**Marjorie HERNANDEZ,
Plaintiff/Petitioner,**

v.

**Susan POOLE, Defendant/Respondent.**

**No. C–94–3143–CAL.**

United States District Court,
N.D. California.

July 10, 2000.

Harold J. Rosenthan, Riordan & Rosenthal, San Francisco, CA, for plaintiff.

Mark S. Howell, Deputy California State, Attorney General, Office of the Attorney General, for the State of California, San Francisco, CA, for defendant.

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

LEGGE, District Judge.

Petitioner Marjorie Hernandez is a prisoner of the State of California. She was convicted of murder in a California state court and is serving a life sentence. In this petition, Hernandez alleges a violation of her constitutional right to a trial by a fair and impartial jury. That allegation is based upon her claim of improper actions and bias of the foreperson of the jury, Mr. Willie Wade.

### I.

This petition was originally filed in 1994 in the Central District of California, and was subsequently transferred to this district. In 1996 this court concluded that petitioner had failed to exhaust her state court remedies. This action was therefore stayed pending Hernandez's exhaustion of her remedies in state court. That was done and this petition then proceeded. Respondent does not question that Hernandez's state court remedies have been exhausted, and this court finds that plaintiff has adequately exhausted her state

remedies in order to proceed with this petition.

Respondent did contend that petitioner's claim is barred by her delay in filing this petition so long after her conviction in 1985. This court addressed that argument in an order dated April 13, 1998. For the reasons stated in that order, the court concluded that respondent's contention of a prejudicial delay did not bar this proceeding. However the order stated that respondent could again raise that contention at the evidentiary hearing. Respondent did later reassert unreasonable delay and prejudice for the express purpose of preserving the issue. But respondent did not offer any further arguments or evidence at the evidentiary hearing, and instead addressed petitioner's claims on the merits.

The April 13, 1998 order also addressed the issue of whether this federal court could hold an evidentiary hearing on issues previously presented to the state courts. This court concluded that because the petition was filed prior to April 24, 1996, it was governed by the federal habeas statutes as they existed before the 1996 amendments. *See* 28 U.S.C. § 2254(d) (1966 & 1996). For the reasons stated in the order, the court found that petitioner was entitled to an evidentiary hearing here. Respondent did not renew any objection on that ground and participated in the evidentiary hearing on the merits.

The April 13, 1998 order directed that an evidentiary hearing be held, and the court appointed counsel for petitioner. The parties thereafter engaged in discovery, and the evidentiary hearing was scheduled and held.

Two witnesses testified at the hearing, juror Wade and petitioner's daughter Elaine (also called Elayna) Villanueva Parker Frogier Davis (for brevity here called "Elaine"), whose testimony will be discussed below. Hernandez was present at the evidentiary hearing but did not testify. Depositions and exhibits were admitted into evidence. Briefs were filed by the parties and the petition was submitted for decision.

Petitioner requests further oral argument on the petition. But the record already contains voluminous briefs, testimony and exhibits, and the issues for decision, while detailed, are not complex. The court does not believe that additional oral argument is necessary. Petitioner also requests that the proceedings be reopened to allow her to obtain an expert witness to testify on certain psychiatric matters. For the reasons discussed below in section IX, the court also denies that request.

The court has heard and reviewed the testimony of the witnesses; has read the depositions and exhibits admitted into evidence; and has considered the applicable legal authorities.

## II.

As stated, this petition is based upon alleged improprieties of the foreperson of defendant's jury, Willie Wade.

One claim is that Wade had improper contacts with defendant's daughter Elaine during Hernandez's trial, and thereby received extrinsic evidence about the issues in the trial and about Hernandez and her family. The second claim is that Wade was biased—actually, impliedly or presumably. This claim is again based factually on Wade's alleged contacts with Elaine during the trial, and also on the evidence of a relationship between Wade and Hernandez *after* her conviction and imprisonment. The claim of juror bias developed as the discovery was being done, but the bias claim is fairly within the allegations of the original petition. Respondent has not objected to the court's consideration of the bias claim, but has addressed it on the merits.

Earlier in these petition proceedings, there was also an allegation that Wade had actual contact with Hernandez herself during her trial. But the evidence has dis-

proved that claim. And the court specifically finds from the record that there were no contacts between Wade and Hernandez during her trial.

Petitioner's claims are of course based upon her right under the Sixth Amendment to the United States Constitution to a trial by impartial jurors.

■ Petitioner bears the burden of proving the facts necessary to establish her constitutional claim, by a preponderance of the evidence. *See McKenzie v. McCormick,* 27 F.3d 1415, 1418–19 (9th Cir.1994). Petitioner must affirmatively show that the facts upon which her claim is based did occur. *See Simmons v. Blodgett,* 110 F.3d 39, 41–42 (9th Cir.1997).

### III.

■ The Sixth Amendment guarantees to an accused a fair trial by a panel of impartial jurors. *See Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied [her] constitutional right to an impartial jury." *Tinsley v. Borg,* 895 F.2d 520, 523–24 (9th Cir.1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1059 (1991). However, the constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Due process requires only a jury capable and willing to decide the case solely on the evidence before it. *See id.*

■ With respect to petitioner's claim that Wade had access to extrinsic information, the Sixth Amendment guarantee of a trial by jury requires that the jury's verdict be based on the evidence presented at the trial. *See Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). Evidence not presented at the trial is deemed "extrinsic." Jury exposure to extrinsic evidence deprives a defendant of the rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment. *See Lawson v. Borg,* 60 F.3d 608, 612 (9th Cir.1995). But a petitioner is entitled to federal habeas relief only if she can establish that the exposure to extrinsic evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 612. In other words, a petitioner must establish that the error resulted in "actual prejudice." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353.

On the issue of Wade's alleged bias, petitioner is constitutionally entitled to a trial by jurors who are not biased against her. Petitioner argues for application of the principle of implied or presumed bias. That principle has been recognized by decisions of this circuit, stated most carefully in *Tinsley v. Borg,* 895 F.2d 520 (9th Cir. 1990). The holdings of *Tinsley* have been followed by subsequent decisions of the circuit. *See, e.g., United States v. Gonzalez,* 214 F.3d 1109 (9th Cir.2000); *United States v. Plache,* 913 F.2d 1375 (9th Cir. 1990); *Coughlin v. Tailhook Association,* 112 F.3d 1052 (9th Cir.1997); *Dyer v. Calderon,* 151 F.3d 970 (9th Cir.1998).

As will be discussed below, the court finds that Wade did not in fact have any extrinsic evidence about petitioner or the facts in her trial. And the court finds that there is not sufficient evidence that Wade had any *actual* bias against petitioner. Indeed, the evidence is just to the contrary; that is, if there were any bias, it was bias in favor of petitioner. This petition therefore concerns primarily the issue of implied or presumed bias.

### IV.

The chronology of the material facts is as follows:

Petitioner's husband, Tony Barajas, was murdered on November 18, 1982. In April 1983 petitioner was charged with that murder jointly with Jose Hernandez, the man she married after Barajas' death.

The trial began April 1, 1985 with the beginning of jury selection. Some time during one of the opening days of the trial, Wade met and talked with Elaine outside of court, which meeting is discussed in detail below. On April 4 Wade responded to being present as a jury panel member. He was voir dired on April 9, 1985, was passed by the attorneys, and was selected as a member of the jury. Testimony began on April 11, 1985. On April 29, 1985 the prosecution called Elaine to testify. Wade recognized Elaine as the girl he had talked to earlier, but he did not tell the trial judge. Other member's of petitioner's family were also called as witnesses for the prosecution. On May 13, 1985, the case was submitted to the jury and Wade was chosen foreperson. Jury verdicts of guilty were returned against petitioner and Jose Hernandez on May 13 and May 14, 1985. The verdict forms were signed by Wade as foreperson.

Petitioner's sentencing hearing was held on June 11, 1985. Wade appeared at that sentencing hearing, and at the request of petitioner's counsel testified on her behalf. Petitioner was sentenced to life imprisonment on June 12, 1985.

Beginning on September 26, 1985 Wade began corresponding with petitioner in prison. The relationship that then developed between petitioner and Wade was, to say the least, unusual. They engaged in a correspondence relationship which lasted over a period of seven years. The record of this habeas case includes the letters which Wade wrote to petitioner, apparently because petitioner saved them. The record does not include any correspondence from petitioner to Wade, apparently because Wade did not save those. But it is obvious from the content of Wade's letters to Hernandez that she did frequently correspond with Wade. The correspondence between Wade and petitioner is bizarre, although not greatly illuminating the issues in this petition. The very fact of a juror communicating with a defendant whom he has convicted of murder is strange. And the letters, starting out as expressions of friendship and concern, over the months and years accelerated to expressions of affection, love and lurid sexual fantasies.

Wade also visited Hernandez in prison. And apparently at the requests of Hernandez, Wade assisted in obtaining some personal property for her, contacted her lawyers about her appeal, and had some contacts with Elaine. Again apparently at petitioner's request, Wade took Elaine to a juvenile court proceeding on her petition to be declared an emancipated minor. And at that proceeding Wade again had personal contact with petitioner.

## V.

As stated, only two witnesses gave verbal testimony at the evidentiary hearing, Wade and Elaine. Petitioner's arguments here are heavily dependent upon Elaine's testimony, in order to establish Wade's alleged conduct during the trial. However, this court must conclude that Elaine was not a credible or reliable witness.

The court does not believe that Elaine's testimony was deliberately false. Rather, the lack of credibility and reliability of her testimony result from her age at the time of the events, and from many tragic events in her life. She was only fourteen years old at the time of the murder of her then stepfather Mr. Barajas. She then was aware that her mother was arrested and charged with that murder, along with her mother's later husband Jose Hernandez. She and her brother and sister were then left without parents. Her brother pled no contest to voluntary manslaughter. She had no home and no family relationships on whom she could rely after the murder of her stepfather and the arrest of her mother. At the trial, when Elaine was only sixteen, she and her sister were called by the prosecution to in essence testify against their mother. And she had to witness the conviction and life incarceration of her mother. There were also indications that she was abused during her

childhood. And she has also endured other serious problems later in her life which need not be recited here. While these events are tragic and worthy of sympathy, they had the effect of making her recollections very unsatisfactory for the following reasons.

She admitted in her testimony in the evidentiary hearing that she is, and has been, unclear on much of the chronology. And the timing of events is important to this petition, since petitioner is trying to establish communications between Wade and Elaine *during* petitioner's trial.

Elaine has given two previous declarations in this case. One was in 1991; that declaration is full of inconsistencies with what she has said on other occasions. And in this evidentiary hearing she admitted to errors. The same is true with respect to her later declaration in 1994. Elaine also had her deposition taken in April 1999, and there are inconsistencies with that too.

She even changed her recollections as late as January 3, 2000, just a few days before this evidentiary hearing, when she met with petitioner's attorneys to prepare to be a witness. And those changes were after her already giving the two declarations which gave rise to this petition, and after her April 1999 deposition.

In her direct testimony in this evidentiary hearing, Elaine did not testify to a lot of the material statements contained in her prior declarations. On cross examination, she confusingly adopted some of the things stated in those declarations in an inconsistent manner. And there were inconsistencies between what she said on direct examination and what she said in her deposition testimony.

In addition, Elaine omitted several facts from her 1991 declaration that are important to this petition and which she later said were true. Her testimony was internally inconsistent in many respects, without her even recognizing or acknowledging the inconsistencies.

In essence, Elaine erroneously placed many of the post-conviction contacts between her, Wade and petitioner into the time frame of her mother's trial, when they did not in fact occur. And her confused memory has also recreated alleged events which did not occur.

Again, it is understandable that Elaine could not remember a lot of things, or remember them consistently, or put them in the right time frame, or differentiate between what actually occurred and what her mother's claims are. But she is nevertheless the only fact witness for petitioner on the necessary factual foundation for the petition; that is, contacts among Wade, Elaine and petitioner *during* petitioner's criminal trial.

## VI.

Certain allegations have been made during the course of these petition proceedings, which the court finds from the record to be untrue.

First, there was an allegation that *during* Hernandez's trial, there was a meeting at Juvenile Hall in San Mateo County among petitioner, Elaine, her brother and Wade. At that meeting, Wade and petitioner briefly kissed. However, it is now clear from the evidence that the meeting did *not* occur *during* petitioner's trial. It occurred on January 21, 1986, at Elaine's emancipation proceedings. As stated, Wade brought Elaine to that proceeding apparently at petitioner's request. But no such event occurred during petitioner's trial.

Second, an allegation has been made that during petitioner's trial Wade gave Elaine a cross on a chain for Elaine to give to petitioner. The factual predicate for this claim again comes entirely from Elaine. Elaine testified that Wade did so, and that she gave the cross to Randy Montesano, petitioner's defense attorney. Wade testified that the event never occurred. And attorney Montesano testified in his deposition that he had no recollection of such a cross. He said that if

someone had given him some jewelry to deliver to petitioner, he probably would not have done so. And he indicated that if he had known a *juror* was attempting to give his client a necklace during trial, he would have brought that fact to the attention of the trial judge. He further testified that he was asked at some time *by petitioner* to get a *ring* from Elaine and hold it for petitioner. He did so, and indeed still had the ring in his possession at the time of his deposition in 1999. Elaine's allegations are confusing that event with the mention of a cross in one of the later letters between Wade and Hernandez. In any event, the court finds from the record that Wade did not give anything to Elaine during petitioner's trial to be given to petitioner.

## VII.

There was the one contact between Wade and Elaine which occurred early in the jury selection proceedings. The precise date of that event is not established. But it was at the very beginning of the trial proceedings in April 1985. It was before Wade was called into the jury box, and before Elaine testified.

Wade picked up Elaine at a bus stop outside of the courthouse and gave her a ride. Elaine testified that Wade gave her a ride to the community home where she was residing in Gilroy, California. And she testified that during that ride Wade talked to her about petitioner, her family, and co-defendant Mr. Hernandez. But Elaine testified that they did not discuss the murder or the trial.

Wade testified that when he picked Elaine up he did not know that she was connected with the case. He had seen Elaine at the courthouse, and when he saw her outside at the bus stop, he thought that she was pretty and wanted to "hit on her." He therefore offered her a ride, which she accepted. He gave her a ride to somewhere in South San Francisco, where she had previously lived. Wade testified that she said only that her name was

Elaine and that she was at court to see her brother's attorney. She did not identify herself as petitioner's daughter, or as having anything to do with the trial. There was no discussion of the trial or petitioner. During the ride, when Elaine told Wade that she was only 16 years old, Wade lost interest in pursuing her.

Wade next saw Elaine when she took the witness stand approximately three to four weeks later. He then recognized her as the girl he had picked up. But Wade did not tell the judge about that prior contact.

The court finds that Elaine's version of the event is again putting into the time frame of petitioner's trial the substance of a conversation which did not occur then. As noted above, Wade had some contacts with Elaine, initially at petitioner's request, *after* petitioner's conviction and incarceration. And it is likely that conversations between them about her family occurred at that time, particularly when Wade took Elaine to her emancipation hearing in January 1986. With respect to the witnesses' differing recollections of the destination of the ride, it appears from the deposition of Mr. Montesano, petitioner's defense attorney, that *he* may have been the person who drove Elaine to Gilroy.

The court therefore finds and concludes that the conversation between Wade and Elaine in early April 1985 did not involve any discussion of the participants in the trial or any events connected with it. There were no other contacts between Wade and Elaine during the trial.

The court therefore also finds and concludes that Wade did not receive any extrinsic evidence about petitioner or about the events being tried. That ground for this petition is therefore denied.

## VII.

That leaves the claim of juror bias. What are the facts from which this court could conclude that Wade was biased as a

juror, or that his bias should be inferred or presumed? It must be emphasized that any bias must be one that existed at the time of the trial, and not a bias which may have developed from the relationship which Wade and petitioner had in the months and years *after* petitioner was convicted and incarcerated.

1. It is true that before he was selected as a juror, Wade picked up Elaine at a bus stop and had a conversation with her. But the court has already found from the evidence that there was no discussion of petitioner or the trial. And there is no indication that their conversation resulted in any bias by Wade against petitioner.

2. When Elaine was called to the witness stand to testify, approximately three to four weeks later, Wade recognized her as the girl he had picked up. Apparently Elaine did not recognize Wade in the jury box. Wade should certainly have told the trial judge about the prior contact, but he did not do so. He testified here that he did not believe that it was important to do so, because there was no communication between them about petitioner or the trial. This court has found his testimony regarding their conversation to be true.

3. Wade volunteered to be the foreperson of the jury, but he was elected by his fellow jurors to that role.

4. Wade testified here that he had found petitioner attractive during her trial.

5. Wade attended petitioner's sentencing hearing. That in itself is not unusual. Many courts, including this one, have had the experience of trial jurors in criminal cases later attending the sentencing proceedings.

6. At Hernandez's sentencing, Wade was asked by her attorney to testify. Wade testified there that he thought that petitioner was guilty of the crime and that she should serve time. But he testified that she should be given a chance for parole.

7. The *later* relationship between Wade and petitioner, beginning *after* she was incarcerated, can not in and of itself be bias on the part of Wade *at* the trial. It could be *evidence* of some bias that had existed at the trial. However, any indication of bias at that time is not demonstrated by the record. As stated, the correspondence between the two started approximately three months after petitioner was sentenced, and it lasted off and on over a period of seven years. While that correspondence relationship and the contents of the correspondence are, as the court has stated, bizarre, there is no evidence from it that Wade had a bias at the time of the trial. The court has read the correspondence, seeking to find any references to the trial or anything that occurred at the time of the trial. Such references are virtually nonexistent. There is no direct evidence of bias during the trial, and certainly no evidence of any bias *against* petitioner.

8. Wade visited petitioner in prison. He did favors for her while she was incarcerated. And he maintained some contacts with Elaine, apparently at petitioner's request.

The court again emphasizes that the bias must be one that existed at the time of the trial, and not any bias which may have developed during the relationship between petitioner and Wade after the trial.

The court can find no material evidence of actual bias. And the court finds no factual predicate on which bias should be inferred or presumed.

## VIII.

As stated above in section III, the principle of implied or presumed bias has been recognized by decisions of this circuit. The principle was most fully explained in *Tinsley,* 895 F.2d 520. The court found no implied bias in that case. But the opinion of the court enumerated circumstances under which implied or presumed bias could exist. The standard defined by *Tinsley* included whether there was a "relationship

in which the potential for substantial emotional involvement, adversely affecting impartiality, is inherent." 895 F.2d at 527.

The principle of implied or presumed bias was again recognized in *Plache,* 913 F.2d 1375. The court there recognized the standards of the *Tinsley* holding and reaffirmed the statement from *Tinsley* that implied bias should be presumed only in extreme or extraordinary cases. *See id.* at 1378. The court found no bias in that case.

■ The principle was again applied, but rejected on the facts, in *Coughlin,* 112 F.3d 1052. The Ninth Circuit again confirmed from *Tinsley* the four "instructive" fact situations from which juror bias might be presumed or implied:

> (1) [W]here the juror is apprised of such prejudicial information about the defendant that the court deems it highly unlikely that he can exercise independent judgment even if the juror states he will[;] (2)[t]he existence of certain relationships between the juror and the defendant[;] (3) where a juror or his close relatives have been personally involved in a situation involving a similar fact pattern[;] and (4) where it is revealed 'that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial ... or that the juror was a witness or somehow involved in the [underlying] transaction'[.]

*Id.* at 1062 (citations omitted).

There have been two Ninth Circuit cases reversing convictions based upon implied or presumed bias since *Tinsley.* In *Dyer,* 151 F.3d 970, the court found that a juror had lied on numerous occasions, a situation not presented in this case. In *Gonzalez,* at 1112, the court found that a juror's traumatic family experiences were similar to issues in the trial and that her answers on voir dire were inconclusive; at p. 1112. Again, those considerations are not present in this case.

Wade told no lies during the voir dire process. The most that he did was fail to disclose to the trial judge, when Elaine was called to testify, that he had previously given her a ride and talked with her. There is no evidence that Wade was apprised of any information prejudicial to petitioner. There was no relationship between Wade and petitioner during the trial. Wade had not been involved in any personal situation involving a fact pattern similar to the trial. And Wade was not an employee of the prosecuting agency, a close relative of a participants in the trial, or in any way involved in the underlying events. And the events *after* petitioner's conviction do not present any ground for implying or presuming that Wade was biased against petitioner during her trial.

## IX.

The later relationship between petitioner and Wade, if it developed into anything that could judicially be called "bias," was bias in favor of petitioner and not against her. The Ninth Circuit cases were ones in which the court was examining the record for bias against the accused. That is not a dispositive point, since a criminal defendant is arguably entitled to an independent juror with no biases. But two common sense questions are: If Wade were biased in favor of petitioner, or even if he were just attracted to her, why did he vote to convict her? And what bias did he have that could have caused him to vote to convict? In an attempt to answer those two obvious questions, petitioner argues from pure speculation, based upon no evidence in the record.

Petitioner argues that Wade wanted to control, manipulate, and have power, particularly over women. There is no evidence of such motivation, except what a reader might want to infer from some of the letters. But there is no material evidence that Wade had any motivation of manipulation or power during petitioner's trial.

Petitioner also argues that Wade wanted her out of the way so that Wade could pursue Elaine. But that argument is contrary to the evidence. The first time Wade met Elaine and gave her a ride, he gave up pursuing her because she was under age. And even Elaine did not testify to any romantic interest by Wade in either petitioner or Elaine. In fact Elaine testified that she never thought that Wade was romantically interested in her. Indeed, his contacts with Elaine after petitioner's conviction were primarily ones which *petitioner* requested. This argument fails not only from an absence of evidence, but also as being contrary to the evidence.

Finally, petitioner argues that Wade voted to convict her because of an "if I can't have her, no one else can" motivation. Again, this is pure speculation for which there is no evidence, except Wade's statement that he found petitioner attractive. In her reply brief, apparently recognizing the absence of evidence of such a motive by Wade, petitioner asks the court to reopen these proceedings to allow petitioner to secure an expert in forensic psychiatry to offer additional testimony.

The court denies that request. Such possible evidence, speculating about the mental processes of a juror in the course of deliberations, violates the reasons for, if not the rule of, the prohibition of Federal Rule of Evidence 606(b). In any event, such a request for new psychiatric evidence, attempting to recreate the mind set of a juror in 1985, asks too much. This petition has been pending since 1994, and in this court since 1996. There was a substantial period of discovery before the evidentiary hearing. The hearing has been held, witnesses have been heard, exhibits have been admitted, and the issues have been extensively briefed. It is not appropriate to reopen the proceedings now for psychiatric speculation about a juror's motives. A finding of bias should be founded upon a record of facts.

### X.

In summary, the court finds and concludes that: There were no contacts between petitioner and Wade during the trial. The only contact between Elaine and Wade during the trial was the ride and conversation on an early day of the trial. Wade did not obtain any extrinsic information, from Elaine or anyone else, about petitioner, her family, or the facts of the case. Wade was not actually biased as a juror, particularly not biased against petitioner. It appears to this court that Wade did only one thing wrong at the trial. That is, when Elaine took the witness stand to testify, he should have told the judge about the contact between them three to four weeks before. But that is not enough to infer or presume bias. The strange relationship that developed between petitioner and Wade *after* petitioner's conviction is just that, strange. But the court does not find sufficient evidence on which to find actual bias at petitioner's trial, or to conclude that bias must be inferred or presumed.

It is therefore ORDERED that the petition for a writ of habeas corpus is DENIED.