37 F.3d 1508
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Clarence Emery WILLIAMS, Jr., Plaintiff-Appellant,
v.
STATE OF ALASKA, Defendant-Appellee.
 No. 93-35710.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 6, 1994.
Decided Sept. 28, 1994.
 
 Before: POOLE, BRUNETTI, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Clarence Williams ("Williams") appeals the district court's denial of his 28 U.S.C. Sec. 2254 habeas corpus petition challenging his conviction by plea of nolo contendere for the first degree murder of his wife. We affirm.
 
 
 3
 Williams first argues that the district court erred by not holding an evidentiary hearing on his habeas petition. Even though Williams has alleged facts which, if proven, would entitle him to relief, the district court did not abuse its discretion by not holding a hearing, because he received a full and fair evidentiary hearing in state court on his motion to withdraw his plea. See Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989) ("A habeas corpus petitioner is entitled to an evidentiary hearing if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in state court."). Williams is not entitled to a separate hearing on his habeas petition, since the hearing in state court may be "either at the time of the trial or in a collateral proceeding." Townsend v. Sain, 372 U.S. 293, 312-13 (1963).
 
 
 4
 The hearing before the state trial court was sufficient, because "the state-court trier of fact [ ] after a full hearing reliably found the relevant facts." Id. After considering Williams' affidavit, the testimony of Williams' attorney, Dick L. Madson ("Mr. Madson"), and three other witnesses, and the state's assertion of prejudice if the plea were withdrawn, the court, which had conducted the proceedings in both Williams' and Larry Hoover's cases, made specific findings that by moving to withdraw his plea, Williams was "attempting to manipulate the criminal justice system" and that Williams agreed that "[h]ad he not entered his plea, based on the strength of the State's case, and especially Hoover's testimony, it seems at this stage that he would stand convicted of first degree murder." The court also found that Williams' plea was "knowing, voluntary, and understanding." These findings are supported by the record, and no federal evidentiary hearing was necessary to develop facts on Williams' claims, since the district court could assess the claims in the habeas petition and the constitutionality of Williams' imprisonment based on the state court record. See Bashor v. Risley, 730 F.2d 1228, 1233 (9th Cir.) ("Although petitioner's allegations, if proved, would entitle him to relief, there is no need for a federal evidentiary hearing to ascertain facts to support those allegations."), cert. denied, 469 U.S. 838 (1984).
 
 
 5
 We also reject Williams' second argument that his state of mind and certain statements of Mr. Madson at the change of plea hearing show that he did not knowingly and voluntarily enter his plea. Mr. Madson's reference to the plea as "kind of shaky" does not indicate that Williams was not competent to enter the plea, since Mr. Madson made this statement while requesting that the court close the hearing to the public because he was afraid of potential prejudicial publicity if the court did not accept Williams' plea. Mr. Madson testified:
 
 
 6
 I don't think Mr. Williams was the most eager person to run into court admitting to first-degree murder. So, you know, between the time I had seen him the night before and that morning, he may have changed his mind, and--you know, even though he expressed he wanted to go through with it, I was--many times, I'm not that confident.
 
 
 7
 Mr. Madson also did not prevent the court from asking Williams questions because he thought Williams was not competent to answer the court; instead, he believed that if the court required Williams to make a statement accepting responsibility, Williams would not do so sufficiently, risking that the court would not accept the plea. Mr. Madson stated:
 
 
 8
 especially in Mr. Williams' case, where if the court wanted--require him to make a statement, I think there was a possibility that Mr. Williams might, as I said, perhaps minimize, truthfully or not--make statements with regard to his participation that the court may not, at that time, accept, and with the jury sitting right there, he could very well say, I won't accept that; go to trial.
 
 
 9
 Some of Mr. Madson's reservations about the plea involved his own desire to go to trial and his belief that Williams could receive 99 years in prison whether he entered a plea or went to trial. Thus, the record indicates that Mr. Madson was concerned about the plea and the interests of his client, but did not express doubt regarding Williams' competency or ability to knowingly and voluntarily enter the plea. See Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir.1991) ("While the opinion of [petitioner's] counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings.").
 
 
 10
 The state court judge, who was very familiar with the case, also believed that Williams was competent and upheld the plea. He was "firmly convinced that Mr. Williams has decided that his best chance to avoid spending what probably would be the rest of his life in jail is to manipulate this system, to avoid trial and almost certain conviction, in the hope an appellate court can bail him out on his plea entry, in just the hopes that Hoover and Page and Botwell, and others of similar ilk will not be available to testify against him later on." The court also found that the state had shown substantial prejudice and that it would "be manifest injustice to allow withdrawal of the plea and to allow Mr. Williams to manipulate the system."
 
 
 11
 These findings which are supported by the record are entitled to a presumption of correctness under 28 U.S.C. Sec. 2254, and Williams has in no way shown that these findings are erroneous and thus not entitled to the presumption. See Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990) (state trial court's factual findings entitled to presumption of correctness on habeas review unless one of the circumstances in 28 U.S.C. Sec. 2254(d)(1) to (7) exists, the determination is not fairly supported by the state court record, or the petitioner shows by convincing evidence that the state court's factual determination is erroneous), cert. denied, 498 U.S. 1091 (1991); see also Agtas v. Whitley, 836 F.2d 1233, 1235 (9th Cir.1988) (petitioner's claim challenging knowing and voluntary nature of nolo contendere plea failed when he presented nothing which undermined the state court's factual findings and district court found from its independent review of the record that he was "provided a fair opportunity to fully develop the factual issues during the succession of state court hearings").
 
 
 12
 The trial court's observations show that it was not required to sua sponte hold a hearing on Williams' competency, since the record does not suggest that there was a genuine doubt regarding Williams' competency to enter his plea. See Chavez v. United States, 656 F.2d 512, 516 (9th Cir.1981) (court of appeals "review[s] the record to see if the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence"). The court thoroughly and carefully questioned Mr. Madson and Williams at the change of plea hearing and made an express finding that "the plea [wa]s knowing, and voluntary, and understanding."
 
 
 13
 Under the two-part Strickland v. Washington test, Williams' third claim that he received ineffective assistance of counsel also fails. See Hill v. Lockhart, 474 U.S. 52, 58 (1985) (Strickland test "applies to challenges to guilty pleas based on ineffective assistance of counsel").
 
 
 14
 Mr. Madson's representation was, at the least, objectively reasonable. See id. at 57 (first prong of Strickland is whether counsel's "representation fell below an objective standard of reasonableness") (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). Mr. Madson testified at the hearing on the motion to withdraw the plea that he conferred with Williams immediately upon discovering that Hoover was going to testify against Williams, had planned on going to trial before this, and discussed with him the elements of and the maximum penalty for first degree murder and accomplice liability. Mr. Madson succeeded in having the court continue Williams' trial for a day so he could further discuss the possibility of a plea with Williams and so Williams would have additional time to consider whether to plead or go to trial. Mr. Madson also confirmed the truthfulness of a statement he made at the change of plea hearing:
 
 
 15
 I've explained to him all of the alternatives, the likelihood of various solutions to his dilem[m]a, and Mr. Williams, in my opinion, clearly and voluntarily and in his own--and on his own desires to proceed in this manner.
 
 
 16
 Furthermore, Mr. Madson's advice to Williams to seriously consider whether he wanted to withdraw his plea, considering the fact that the state would bring the other charges against him and the likelihood of the damaging impact of Hoover's testimony, was not ineffective.
 
 
 17
 Mr. Madson also testified that Williams had trouble understanding basic concepts, such as the difference between accessories and principles. In addition, Williams had told Mr. Madson that he did not intend for his wife to die or be killed on the day it actually happened because he had changed his mind. However, in response, Mr. Madson explained to Williams that despite the fact that he stated he changed his mind, the defense of withdrawal was not available to him. He also told Williams that he could be convicted of first degree murder, even if Hoover had been the one who pulled the trigger, since under Alaska law regarding solicitation, "there wasn't any difference between who actually pulled the trigger."
 
 
 18
 The state trial court's findings that Williams was trying to manipulate the system, that the state had made a showing of substantial prejudice, and that allowing Williams to withdraw his plea would be a manifest injustice clearly indicate that it believed Mr. Madson's testimony regarding his representation and not Williams claim. These findings are entitled to a presumption of correctness. See Tinsley, 895 F.2d at 525.
 
 
 19
 Williams also fails to satisfy the prejudice prong of Strickland because he does not allege that he would not have entered his plea if Mr. Madson would have explained certain aspects of his case or the charges against him in more detail. See Hill 474 U.S. at 59 (second prong of Strickland in this context is whether "there is a reasonable probability that, but for counsel's errors, he would not have pleaded [nolo contendere] and would have insisted on going to trial") (quoting Strickland, 466 U.S. at 687-88). He also does not claim that his reliance on any erroneous advice of Mr. Madson caused him to enter his plea. Therefore, because Williams did not allege the kind of prejudice necessary to satisfy the second prong of Strickland, his ineffective assistance of counsel claim fails, and the district court did not err by rejecting his request for an evidentiary hearing on this claim. See Hill, 474 U.S. at 60.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3