66 F.3d 336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Danny R. SANDERS, Petitioner-Appellant
v.
Charles D. MARSHALL, Warden, Pelican Bay State Prison,
Respondent-Appellee.
 No. 94-16933.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 17, 1995.*
Decided Sept. 12, 1995.
 
 Before: FLETCHER, POOLE and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Danny Sanders appeals pro se the district court's dismissal of his habeas corpus petition challenging his California murder conviction. We have jurisdiction under 28 U.S.C. Sec. 2253 and we affirm.
 
 
 3
 Sanders was charged with murder under Cal.Penal Code Sec. 187 for the June 1984 killing of his ex-girlfriend Betty Coppes,[1] and with auto theft under Cal.Veh.Code Sec. 10851. At trial, Sanders admitted to killing Coppes but contended that he did not have the required mental state for murder because his consumption of drugs and alcohol had rendered him unconscious. He was convicted of both charges and sentenced to 30 years to life in prison.
 
 
 4
 The California Court of Appeal vacated a three-year enhancement for infliction of great bodily harm but otherwise affirmed, and the California Supreme Court denied review. This appeal is from the district court's dismissal of Sanders's fourth federal habeas petition.[2]
 
 DISCUSSION
 
 5
 The decision whether to grant or to deny a petition for habeas corpus is reviewed de novo. Sanders v. Ratelle, 21 F.3d 1446, 1451 (9th Cir.1994). State court factual conclusions are entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d). See Collazo v. Estelle, 940 F.2d 411, 415-16 (9th Cir.1991) (en banc), cert. denied, 502 U.S. 1031 (1992). Relief will be granted if trial errors " 'had a substantial and injurious effect or influence in determining the jury's verdict.' " Brecht v. Abrahamson, 113 S.Ct. 1710 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 766 (1946)).
 
 1. Failure To Give a Limiting Instruction
 
 6
 Sanders first challenges the trial court's failure to give a limiting instruction sua sponte regarding discussion at trial of his statement to sheriff's deputies. The court had ruled the statement inadmissible before trial because Sanders was not given adequate Miranda warnings. See Miranda v. Arizona, 384 U.S. 436 (1966). Nonetheless, over defense objections the court permitted the prosecution to cross-examine an expert psychiatric witness, Dr. Bruce Smith, about the statement for the purpose of impeaching Smith's testimony by illuminating inconsistencies between Sanders's statements to the deputies and to Smith. No limiting instruction was requested or given. The jury was instructed as follows:
 
 
 7
 If you find that before the trial the defendant made willfully false or misleading statements concerning the charge upon which he is now being tried, you may consider such statements as a circumstance tending to prove a consciousness of guilt but it is not sufficient of itself to prove guilt.
 
 
 8
 Our court has not determined whether a sua sponte limiting instruction is required when a defendant's statement made without adequate Miranda warnings is admitted for purposes other than to prove guilt. Nonetheless, we need not reach that issue in this case because we hold that the error, if any, was harmless.
 
 
 9
 On cross-examination of Smith, the prosecution referred to parts of Sanders's statement in which Sanders claimed that on the day of the murder he consumed three or four bottles of wine and smoked a PCP-laced cigarette worth $30.00. However, Smith testified that Sanders had told him that he had drunk only one bottle of wine, and that he had shared a cigarette worth just $10.00.
 
 
 10
 Although there are discrepancies as to amount, arguably Sanders's intoxication defense was strengthened by the revelation that Sanders had reported his alcohol and drug consumption to the deputies. These discrepancies were not the only ones. In closing argument the prosecution cited numerous discrepancies between Sanders's trial testimony and his statements to Smith, as well as between Sanders's testimony and the testimony of other witnesses regarding drugs and alcohol. The evidence of inconsistencies between the suppressed statement and Sanders's comments to Smith was cumulative; we conclude its admission without a limiting instruction did not have "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 113 S.Ct. at 1722.
 
 
 11
 2. Failure To Instruct on Involuntary Manslaughter
 
 
 12
 Sanders also contends that the trial court erred in failing to give an instruction sua sponte on involuntary manslaughter. The jury was instructed on first- and second-degree murder and voluntary manslaughter; the defense did not seek an instruction on involuntary manslaughter, despite the fact that in California, a killing committed while the defendant is unconscious due to voluntary intoxication is involuntary manslaughter. People v. Graham, 71 Cal.2d 303, 316-17 (1969); CALJIC 8.47 (1981). The jury was instructed that it could consider intoxication in determining whether Sanders had the requisite mental state for each of the three degrees of homicide upon which it was instructed.
 
 
 13
 The trial court had no obligation to give an involuntary manslaughter instruction in the absence of a request for one. The Due Process Clause does not require a sua sponte lesser included offense instruction in a non-capital case. James v. Reese, 546 F.2d 325, 327 (9th Cir.1976). The most telling point, however, is that if jurors had any doubts about Sanders's consciousness during the murder, they surely would not have convicted him of first-degree murder, the most serious of the three levels of homicide available to them. Thus, the lack of an involuntary manslaughter instruction did not prejudice Sanders.
 
 3. Juror Misconduct
 
 14
 Sanders claims that jurors' exposure to a newspaper article about the case constituted misconduct requiring reversal. Shortly before deliberations, a newspaper reported that the trial court had suppressed parts of a 911 tape recorded after the murder that contained the sounds of screams and shotgun blasts.
 
 
 15
 After the defense learned that some jurors might have seen the article, the trial judge polled all jurors. Three indicated some exposure to the article, but they stated that they had averted their attention after realizing what the article was about, that they would be unaffected by the exposure, and that their impartiality had not been compromised. The judge admonished them to disregard the article and denied a defense motion for a mistrial.
 
 
 16
 "The Sixth Amendment right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." Tinsley v. Borg, 895 F.2d 520, 523 (9th Cir.1990), cert. denied, 498 U.S. 1091 (1991). "The remedy for allegations of juror partiality is a post-trial hearing in which the defendant has the opportunity to prove bias". Id. at 524. "When such a post-trial hearing is held, the state court's findings are entitled to a presumption of correctness on federal habeas corpus review." Id.
 
 
 17
 In this case, the state court made findings, based upon its polling, that the jurors were capable of being impartial. Sanders has offered no evidence that the finding was erroneous, and we therefore presume that the trial court was correct.
 
 4. Prosecutorial Misconduct
 
 18
 Sanders claims that the prosecutor engaged in misconduct by reenacting the crime before the jury. He raised this issue for the first time in his third state habeas petition. The district court correctly denied the claim on the ground that it was procedurally defaulted and that Sanders made no showing of cause for his default.
 
 5. Ineffective Assistance of Counsel
 
 19
 Finally, Sanders asserts that he received ineffective assistance of counsel at trial. To obtain relief for an ineffective assistance of counsel claim, a defendant must meet the two requirements stated in Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second, a defendant must show that counsel's deficient performance prejudiced the defendant. Id. at 692. In showing prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 
 
 20
 Although Sanders advances many errors that he believes constituted ineffective assistance of counsel, we consider only the three that were presented to the district court: (1) counsel's withdrawal of pretrial motions to dismiss and to suppress evidence; (2) counsel's failure to request an involuntary manslaughter instruction; and (3) counsel's failure to request a limiting instruction regarding the admission of parts of the suppressed statement.
 
 
 21
 Sanders's attorney told the trial court that he withdrew the motions to dismiss and suppress[3] as a result of a "tactical decision" and because of his "good faith belief" that there were insufficient legal grounds for pursuing them. The performance of counsel is not considered ineffective when counsel fails to make motions that he believes to be meritless. Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir.), cert. denied, 115 S.Ct. 513 (1994). Sanders has not attempted to demonstrate that either motion had a chance of success.
 
 
 22
 Sanders next contends that his attorney was ineffective for failing to request an involuntary manslaughter instruction. Because the lack of such an instruction was not prejudicial, we need not decide whether the failure to request the instruction constitutes incompetence. Similarly, because the lack of a limiting instruction regarding the suppressed statement did not prejudice Sanders, we do not reach the question of whether the attorney's failure to request such an instruction demonstrates incompetence.
 
 CONCLUSION
 
 23
 The trial court's error, if any, in failing to give a limiting instruction sua sponte regarding the admission of parts of Sanders's statement was harmless. The trial court did not err in failing to instruct sua sponte on involuntary manslaughter or in determining that jurors were not biased by reading a newspaper article about the trial. Sanders forfeited his claim of prosecutorial misconduct. The district court correctly concluded that Sanders failed to demonstrate that he received ineffective assistance of counsel at trial. The district court decision is
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In the record, the victim occasionally is referred to as Betty Dukes
 
 
 [2]
 Sanders's first and second petitions were dismissed for failure to exhaust his ineffective assistance of counsel claim. The district court denied Sanders's third federal petition. On appeal, we held that Sanders had not exhausted his federal constitutional claim regarding the trial court's failure to give a limiting instruction regarding the admission of parts of the defendant's statement that had been excluded. Sanders v. Borg, No. 91-16198 (9th Cir. May 26, 1993). Sanders submitted his fourth petition after the California Supreme Court denied his state habeas petition on the instructional error claim
 
 
 [3]
 It is unclear from the record what evidence was at issue in the withdrawn suppression motion