FILED

NOT FOR PUBLICATION

DEC 18 2019

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| K. E. C., a minor by and though his guardian ad litem, Deniz Gonzalez,<br><br>               Plaintiff-Appellant,<br><br>v.<br><br>COUNTY OF KERN, a public entity; JASON AYALA, Deputy Sheriff, a public employee; JOSHUA BATHE, Deputy Sheriff, a public employee,<br><br>               Defendants-Appellees. | No. 18-15344<br><br>D.C. No.<br>1:14-cv-01099-DAD-JLT<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted December 10, 2019
San Francisco, California

Before: SCHROEDER and GRABER, Circuit Judges, and M. WATSON,[**] District Judge.

---

      [*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

      [**]      The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

Luis Campos died by suicide while incarcerated in the Kern County Jail. At trial, the jury found that the jail's deputies were not deliberately indifferent to Campos' serious medical need. Campos' minor child, Plaintiff K.C., appeals the entry of summary judgment for Defendant Kern County on his deliberate-indifference claim under Monell v. Department of Social Services, 436 U.S. 658 (1978), and the denial of his motion for a new trial. We affirm.

1. The district court did not abuse its discretion by denying Plaintiff's motion for a new trial on the ground of juror bias.[1] Juror No. 3's note and the subsequent discussion supplemented, but did not contradict, answers that he gave during voir dire. It was not clearly erroneous for the district court to accept Juror No. 3's explanation that he "remembered the fundraising event the evening after the jury was selected and thought he should mention it." See Rodriguez, 891 F.3d at 806 (holding that no implied bias existed where a juror "failed to mention his father's ACLU connection" during the initial voir dire but told the court about the omission "the next day, on his own initiative"). And the fact that Juror No. 3's

___

[1] We review for abuse of discretion a district court's denial of a motion for a new trial. Rodriguez v. County of Los Angeles, 891 F.3d 776, 804 (9th Cir. 2018). But we review de novo a district court's determination regarding implied juror bias, and we review for clear error a district court's findings of fact and credibility determinations. Id. at 803–04. We review for abuse of discretion a district court's determination regarding actual juror bias. United States v. Gonzalez, 214 F.3d 1109, 1112 (9th Cir. 2000).

restaurant served some law enforcement officers and co-sponsored a benefit dinner for an injured correctional officer did not amount to implied bias, given that this court "will not presume bias merely because a juror works in law enforcement." Id. at 804 (quoting Tinsley v. Borg, 895 F.2d 520, 529 (9th Cir. 1990)). Juror No. 3 did not exhibit implied bias.

Similarly, the district court did not abuse its discretion by determining that Juror No. 3 did not exhibit actual bias. Juror No. 3 stated several times, unequivocally, that he would be impartial and fair to both sides. And he did not express a view adverse to Plaintiff's position; he merely stated that he liked "some," but not all, law enforcement officers who ate at his restaurant. By contrast, we have found actual bias where a juror experienced a traumatic event caused by circumstances similar to the defendant's alleged crimes and equivocated three times when asked whether she could serve fairly and impartially. Gonzalez, 214 F.3d at 1114.

2. The district court correctly granted summary judgment to the County on Plaintiff's Monell claim.[2] Placing a fan near Campos' suicide-watch cell was negligent, and the fan's placement had tragic consequences. But such negligence

---

[2] We review de novo a grant of summary judgment. King v. County of Los Angeles, 885 F.3d 548, 556 (9th Cir. 2018).

3

does not ripen into an unconstitutional municipal policy or custom unless the municipality has "actual or constructive notice that the particular [policy or custom] is substantially certain to result in the violation of . . . constitutional rights." Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc) (quoting City of Canton v. Harris, 489 U.S. 378, 396 (1989)). Nothing in the record shows that the County's policymakers, as opposed to the deputies, had actual or constructive notice that the fan's placement was substantially certain to violate Campos' constitutional rights.

The configuration of the suicide-watch cell could, in theory, support liability for the County. See id. at 1077 (imposing Monell liability where the defendant county had passed ordinances "aimed at mitigating the risk of serious injury to individuals housed in sobering cells," demonstrating that the county "knew of the risk of the very type of harm that befell Castro"). Unlike the plaintiff in Castro, however, Plaintiff here cannot point to any such ordinances, and no evidence in the record shows that the County knew of the risk posed by the cell's configuration. Thus, the County did not have "actual or constructive notice that" the suicide-watch cell's configuration was "substantially certain to result in the violation of" Campos' constitutional rights. Id. at 1076.

4

Finally, even assuming that the County had a custom of not providing suicidal inmates with mental-health evaluations, Plaintiff did not show that the custom was the "moving force" behind the purported constitutional violation of failing to prevent Campos' suicide. City of Canton, 489 U.S. at 389. Campos had been identified as suicidal, and correctional officers checked on him twice, at irregular intervals, in every 30-minute period. Plaintiff did not explain, or present any evidence about, how a mental-health evaluation would have improved Campos' mental state or led to any increased or different monitoring or housing for Campos that could have prevented his suicide.

**AFFIRMED.**